IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TSMC TECHNOLOGY, INC., TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY, LIMITED and TSMC NORTH AMERICA CORP., | ) ) ) ) ) | Civil Action No. 14-cv-00721-LPS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ZOND, LLC, | ) ) | |
| Defendant. | ) | |

**COMBINED BRIEF IN OPPOSITION TO DEFENDANT ZOND, LLC'S
MOTION TO TRANSFER (D.I. 14) AND REPLY BRIEF IN SUPPORT OF THE TSMC
PLAINTIFFS' MOTION TO ENJOIN ZOND, LLC FROM MAINTAINING
A LATER-FILED ACTION IN THE DISTRICT OF MASSACHUSETTS (D.I. 8)**

Dated: July 25, 2014

**DUANE MORRIS LLP**

Richard L. Renck (#3893)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Phone:  302-657-4900
Fax:  302 657 4901
Email: rlrenck@duanemorris.com

*Attorneys for Plaintiffs TSMC Technology, Inc.,
Taiwan Semiconductor Manufacturing Company,
Limited and TSMC North America Corp.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................1

II. ARGUMENT ......................................................................................................5

    A.    Zond's Arguments About "Anticipatory Filing" and "Forum Shopping"
          Are Without Basis in Law or Fact .......................................................... 5

          1.    There is No "Anticipatory Filing Exception" in Patent Cases—It is
              "Merely One Factor" to Consider. ............................................. 6

          2.    TSMC Did Not Engage in Any Bad Faith or Misleading Conduct When it
              Received Zond's June 5 Letter ................................................. 7

    B.    Zond's Discussion of the § 1404 Factors Ignores this Court's Transfer
          Law and Mischaracterizes the Procedural History in Massachusetts .................. 10

          1.    Zond's Incorporation in Delaware—which Zond Ignores—Carries
              "Substantial Weight" in the Transfer Analysis ......................................... 10

          2.    TSMC Technology Was Rightly Concerned That It Would Be Subject to
              Zond's Broad and Indiscriminate Infringement Theories Over "28 nm and
              20 nm nodes" ........................................................................ 11

          3.    Zond's Heavy Emphasis on Witness and Document Location Ignores That
              These Factors Carry No Weight in Delaware ........................................... 14

          4.    Zond Overstates Judge Young's Familiarity With the Patented Technology
              ........................................................................................ 16

III. CONCLUSION ..................................................................................................19

i

**TABLE OF AUTHORITIES**

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001).....................................................................................11

*Arrowhead Indus. Water v. Ecolochem, Inc.*,
    846 F.2d 731 (Fed. Cir. 1988)..........................................................................................12

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am.*,
    350 F. Supp. 2d 620 (E.D. Pa. 2004).................................................................................6

*E.E.O.C. v. Univ. of Penn.*,
    850 F.2d 969 (3d Cir. 1988)...............................................................................................6

*Electronics for Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005)................................................................................... 1, 6-8

*FMC Corp. v. AMVAC Chem. Corp.*,
    379 F. Supp. 2d 733 (E.D. Pa. 2005).................................................................................6

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993)..................................................................................... 5, 7-8

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
    Civ. No. 07-589-SLR/LPS, 2008 WL 4809104 (D. Del. Nov. 5, 2008) ............................. 8-9

*Intellectual Ventures I LLC v. Altera Corp.*,
    842 F. Supp. 2d 744 (D. Del. 2012)............................................................................ *passim*

*Micron Tech., Inc. v. MOSAID Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008)...................................................................................... 1, 6-7

*Mission Ins. Co. v. Puritan Fashions Corp.*,
    706 F.2d 599 (5th Cir. 1983) ..............................................................................................7

*One World Botanicals v. Gulf Coast Nutritionals*,
    987 F. Supp. 317 (D.N.J. 1997).........................................................................................6

*Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*,
    669 F. Supp. 2d 613 (W.D. Pa. 2009)................................................................................6

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)................................................................................................19

*Softview LLC v. Apple Inc.*,
    Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ........................................17

*Woodbolt Distribution, LLC v. Natural Alternatives Int'l, Inc.*, Civ. No. 11-cv-1266-
GMS, 2013 WL 247041 (D. Del. Jan. 23, 2013) ...................................................................8

**Statutes**

28 U.S.C. § 1404................................................................................................... *passim*

35 U.S.C. § 271(g) ................................................................................................ 3-4, 13

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................................... 16-17

Fed. R. Evid. 408 ..........................................................................................................9

## I.    INTRODUCTION

Zond's transfer-related briefing, for all its rhetoric and liberties taken with the litigation record, concedes, as it must, two fundamental facts: (1) this declaratory judgment suit is the chronologically first-filed action, and (2) it is for this Court to decide whether to maintain venue in Delaware or transfer this case to Massachusetts.  These undisputed points, together with black-letter Federal Circuit first-to-file law, compel only one conclusion as to which forum is appropriate: As the first-filed action, this dispute should remain in Delaware.  Zond offers no meaningful reason for transfer—because none exists.  Instead, Zond's brief suffers from a multitude of defects, both on the law and on the facts.

*First*, in arguing for an "anticipatory filing exception" to the first-to-file rule, Zond is wrong on the law.  No such exception exists in patent cases.  In fact, the Federal Circuit has made clear that a district court would abuse its discretion by focusing exclusively, or even predominantly, on the anticipatory nature of the suit.  *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005).  This makes sense.  After all, declaratory actions are, by definition, anticipatory of the patentee's infringement case; indeed the very purpose of the Declaratory Judgment Act in patent cases is to curb patentees' ability to unilaterally dictate when and where their infringement assertions can be tested.

As a result, an alleged anticipatory filing is relevant "merely as one factor in the analysis" and must be weighed against all the other § 1404 private- and public-interest factors.  *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).  Here, as shown in TSMC's opening injunction papers (D.I. 8), those factors are decidedly in Delaware's favor, including the facts that (1) the TSMC plaintiffs filed here first, (2) defendant Zond is incorporated in Delaware, (3) plaintiff TSMC Technology, Inc. is incorporated in Delaware, and (4) this District is one of the most experienced patent courts in the country.

*Second*, in attempting to portray TSMC's declaratory suit as a bad-faith "anticipatory filing," Zond has it exactly backwards—it is Zond's conduct in sending the June 5 threat letter that is questionable, not TSMC's reliance on its rights under the Declaratory Judgment Act. Courts in patent cases have on occasion found a declaratory plaintiff to have anticipatorily sued, but in those cases, it is because the accused infringer engaged in some kind of bad-faith or unseemly conduct—such as by contacting the patentee to elicit a threat or stringing the patent holder along in settlement negotiations.

Nothing of that sort happened here. Because of Zond's outrageous demands, no TSMC entity has ever engaged in meaningful settlement negotiations with Zond, either on the Group Two Patents in suit here, or the Group One Patents involved in the earlier 13-cv-11634 Action in Massachusetts. Zond's June 5 letter and the infringement charges therein came out of the blue (although they were clearly motivated by Judge Young's decision three days earlier to stay the 11-cv-11634 Action in Massachusetts) and were facially unreasonable. Zond knew it was dealing with a Taiwanese company, but gave TSMC Ltd. only 1.5 business days to respond (and, in fact, the letter was not received in Taiwan until after Zond's arbitrary deadline). This was not a real invitation to the settlement table. Moreover, TSMC never did anything to suggest that Zond should hold off filing suit because TSMC was interested in talking. Instead, TSMC chose not to operate under this cloud of uncertainty and filed this suit under the Declaratory Judgment Act, as it was well within its rights to do.

*Third*, in attempting to portray TSMC as desperate to escape Massachusetts (part of the "anticipatory filing" rhetoric), Zond has manipulated the procedural history to create the story it wants to tell, rather than relate what actually happened. For instance, Zond's chronology of events suggests that TSMC filed its *inter partes* review ("IPR") petitions only after its motion to

coordinate the District of Massachusetts cases was denied. (D.I. 14 at 8-9). Not true. All of TSMC's IPR petitions were on file by May 30, and Judge Young issued his stay on June 2—all while the motion to coordinate before Judge Casper was still pending and undecided. (D.I. 123-124 in the 13-cv-11634 Action).[1] Judge Casper denied the motion over a week later, on June 11. (D.I. 100 in the Gillette Action). The story in Zond's papers (*e.g.*, D.I. 14 at 1) that TSMC was "eager" to escape Massachusetts and tried every tactic in the book is fiction. The facts show a very rational course of action by TSMC to first coordinate a multitude of cases before many different judges on common patents. Furthermore, TSMC only sought a stay after two other Massachusetts cases on the same Group One Patents were stayed pending the IPRs that had been filed. Such actions are very common in today's post-America Invents Act world of filing IPRs (and coordinating them with other defendants and IPR filers).

*Fourth*, in attempting to diminish the connection of co-plaintiff TSMC Technology, a Delaware corporation, to this Delaware suit, Zond ignores that it itself is formed under Delaware law. That important fact is entitled to "substantial weight" in Delaware's favor in the transfer analysis, *see, e.g. Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012) (hereinafter, "*Altera*"), but Zond notably does not mention it once in its papers. Moreover, in an effort to dismiss TSMC Technology from the suit, Zond mischaracterizes its own infringement theories against TSMC entities. Zond represents that its theory is limited to direct infringement by importation under 35 U.S.C. § 271(g), but in actuality, Zond's past complaints against TSMC in Massachusetts (like its current complaint in the New 14-cv-12438 Action) have also asserted alternative direct infringement theories (including use) as well as indirect theories

---

[1]     TSMC filed its motion to coordinate before Judge Casper, instead of Judge Young, because under the District of Massachusetts' local rules, a motion to coordinate pending cases must be filed before the judge who is presiding over the chronologically earliest-filed case. That was Judge Casper.

like induced infringement. And Zond's June 5 threat letter charged infringement generally, with no restriction or even reference to § 271(g). Zond now attempts to limit its infringement theory for purposes of this motion, but based on Zond's conduct vis-à-vis the TSMC family of entities, TSMC Technology had every reason to be concerned that it too would face allegations of infringement liability.

*Fifth*, in arguing under § 1404's private-interest prongs, Zond assigns significant weight to the location of its two employees and "books and records" in Massachusetts, and to the fact that the prosecuting attorney of the patents-in-suit has an office in Rhode Island. But this Court has already held that these factors are entitled to little—and often no weight—in the transfer analysis. For instance, "[p]arty witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial." *Altera*, 842 F. Supp. 2d at 757.

*Sixth*, in seeking to establish that judicial economies favor Massachusetts because of Judge Young's past experience in the 13-cv-11634 Action, Zond overstates Judge Young's "familiarity" with the accused "semiconductor manufacturing processes and Zond's related patents." (D.I. 14 at 18). As the docket in that case shows, and as summarized below, Judge Young has not made a single technical ruling in the case, has not received a technology tutorial, has not been provided with any *Markman* briefing, has not held a *Markman* hearing, and has not reached the summary judgment stage. The court issued several early orders on pleading matters and motions to compel discovery, none of which required a close understanding of the technology, and then stayed the case (because, in part, that case was still in its infancy). That is hardly compelling reason for transferring this case to Massachusetts.

*Seventh*, and finally, in arguing that Zond's later-filed, parallel infringement suit justifies transfer to Massachusetts, Zond fails to mention that TSMC has filed a motion to dismiss that complaint for ineffective service. In its haste to get a Massachusetts complaint on file after TSMC filed this action (so it could argue "anticipatory filing"), Zond failed to follow basic service-of-process law. Zond attempted to effect service on TSMC Ltd., the Taiwanese parent corporation with no offices in the U.S., and TSMC North America, a subsidiary of TSMC Ltd., by delivering papers to a temporary receptionist at the front desk of TSMC North America's office building in California. To this day, Zond insists this was proper because its process server told the receptionist that, in his view, she had "apparent" authority to accept service on TSMC Ltd.'s and TSMC North America's behalf. Judge Young has set a September 19 hearing date for that motion.

The Federal Circuit requires "sound reason" from Zond to justify departure from the first-to-file rule. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993). Likewise, as the movant for transfer, Zond "squarely" bears the burden of establishing that the § 1404 factors favor departure from Delaware. *Altera*, 842 F. Supp. 2d at 752. Zond's transfer papers, riddled throughout with the seven defects above, do not come close to meeting this burden. This case should remain where it was first filed—in this District.

## II.     ARGUMENT

### A.     Zond's Arguments About "Anticipatory Filing" and "Forum Shopping" Are Without Basis in Law or Fact

Throughout its papers, Zond's main argument, both for transfer and against the first-to-file rule, is that this declaratory action in Delaware "falls squarely within the 'anticipatory litigation' exception to the first-to-file rule" (D.I. 14 at 12)—which Zond terms "a well-

recognized exception." (*Id.* at 2). But there is no such exception in patent cases and it would be an abuse of discretion, under controlling Federal Circuit law, to find one.

### 1. There is No "Anticipatory Filing Exception" in Patent Cases—It is "Merely One Factor" to Consider.

The Federal Circuit's decision in *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005), controls here. In *Electronics*, the Federal Circuit held that it is an "abuse[] of discretion" for a district court to depart from the first-to-file rule based exclusively, or even predominantly, on the "anticipatory nature of a suit." *Electronics*, 394 F.3d 1341, 1348 (Fed. Cir. 2005). "[W]hether a party intended to preempt another's infringement suit" via declaratory judgment action is "merely one factor in the analysis." *Id.* at 1347-48. Indeed, three years later, the Federal Circuit reaffirmed this principle in *Micron Tech. v. MOSAID Techs, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), and further emphasized that a district court in a first-to-file analysis must consider the § 1404 private- and public-interest factors. *Id.* at 904. This is because the "real underlying dispute" in a first-to-file case involving parallel declaratory and infringement actions is over "the convenience and suitability of the forums," so "the trial court must weigh the factors used in a transfer analysis as for any other transfer motion." *Id.*

For its "anticipatory filing" and "forum shopping" arguments (D.I. 14 at 12-14), Zond does not rely on this controlling law, but rather on a series of cases from the Western District and Eastern District of Pennsylvania, the District of New Jersey, and the Fifth Circuit (*id.* at 12). But these cases all concern federal litigation over ***state law*** or ***non-patent*** causes of action and are therefore governed by regional circuit law, not the Federal Circuit law applicable to patent cases.[2] So regardless of how Zond's cited courts construe anticipatory filing for non-patent

---

[2] *See, e.g., Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.,* 669 F. Supp. 2d 613 (W.D. Pa. 2009) (breach of implied-in-fact contract); *FMC Corp. v. AMVAC Chem. Corp.,* 379 F. Supp. 2d 733 (E.D. Pa. 2005) (copyright infringement); *Drugstore-Direct, Inc. v. Cartier Div. of*

causes of action, that is an irrelevant and unnecessary detour here, because it is the Federal

Circuit's standard that controls the first-to-file analysis. *See Genentech, Inc. v. Eli Lilly & Co.*,

998 F.2d 931, 937 (Fed. Cir. 1993) ("The question of whether a properly brought declaratory

action to determine patent rights should yield to a later-filed suit for patent infringement raises

the issue of national uniformity in patent cases . . . ."). And under *Electronics* and *Micron*, any

suggestion of "anticipatory filing" is "merely one factor" in the analysis.

### 2. TSMC Did Not Engage in Any Bad Faith or Misleading Conduct When it Received Zond's June 5 Letter

But even as to that "one factor," Zond badly misfires in its effort to create the kind of

bad-faith conduct necessary to trigger the "anticipatory filing" exception. Zond suggests that

"bad faith" exists whenever a litigant "wins the race to the courthouse in advance of a deadline

from another party for resolution of a dispute between them without litigation." (D.I. 14 at 12).

That is wrong, particularly in patent cases. Otherwise, the "anticipatory filing" exception would

swallow whole the first-to-file rule, because actions brought under the Declaratory Judgment Act

by definition anticipate the patent holder's infringement claims. Indeed, as recognized by the

Federal Circuit, that was one of Congress' core purposes in enacting the statute; Congress

wished to eliminate scenarios where recipients of infringement threats—like TSMC here—"were

rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue."

*Electronics*, 394 F.3d at 1346, quoting *Arrowhead Indus. Water v. Ecolochem, Inc.*, 846 F.2d

731, 735 (Fed. Cir. 1988). Thus, it its unsurprising that the Federal Circuit has affirmed the first-

---

*Richemont N. Am.,* 350 F. Supp. 2d 620 (E.D. Pa. 2004) (trademark infringement); *One World Botanicals v. Gulf Coast Nutritionals,* 987 F. Supp. 317 n.10 (D.N.J. 1997) (trademark infringement; noting difference between regional circuit and Federal Circuit law); *E.E.O.C. v. Univ. of Penn.,* 850 F.2d 969 (3d Cir. 1988) (action to enforce Equal Employment Opportunity Commission subpoena); *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir. 1983) (insurance coverage dispute).

to-file rule, and rejected a departure based on "anticipatory filing," when the accused infringer's declaratory action preceded the patentee's parallel infringement suit by as little as four days, *see Electronics*, 394 F.3d at 1344, or even one, *see Genentech*, 998 F.2d at 935.

The fact that Zond's June 5 letter proclaimed a deadline of June 9 for settlement discussions is irrelevant. In *Electronics*, the patentee decreed a self-serving deadline too, December 15: "If we don't get a deal, we will pull the trigger and execute the litigation." *Electronics for Imaging*, 394 F.3d at 1344.[3] The accused infringer did not wait, but instead filed its declaratory judgment action on December 11, four days before—and the Federal Circuit had no problem with the district court maintaining jurisdiction over this declaratory action as the first-filed suit. *Id.* at 1348. After all, the purpose of the Declaratory Judgment Act in patent cases is to allow accused infringers to take the reins, rather than operate on the patentee's preferred timetable or deal with the anxiety of checking PACER daily to see if suit was filed.

When courts have given weight to the anticipatory filing factor in patent cases, it is typically because the accused infringer engaged in some kind of affirmatively misleading or bad-faith conduct toward the patentee. In Zond's cited *Woodbolt* case, for instance, the parties were engaged in apparently meaningful settlement discussions—in fact, a third settlement conference was set for the very day the accused infringer quietly filed its declaratory judgment complaint. *See Woodbolt Distribution, LLC v. Natural Alternatives Int'l, Inc.*, Civ. No. 11-cv-1266-GMS, 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013). Similarly, in Zond's cited *Innovative Therapies* case, the declaratory plaintiff's conduct was even more unseemly. There, the declaratory plaintiff actively worked to elicit infringement threats from the patentee so that it could file its

---

[3] This ultimatum was phrased a little more colorfully than the one in Zond's June 5 letter— "Unless TSMC promptly obtains a license to the right to use Zond's patented technology, Zond sees litigation as the only available avenue to put an end to TSMC's continued infringing activities." (D.I. 8, Ex. B)—but the substance and spirit is the same.

action, by "initiating telephone conversations to employees of the patentee who were not in decision-making positions and who were not informed of the real purpose behind the conversations." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, Civ. No. 07-589-SLR/LPS, 2008 WL 4809104, at *2 (D. Del. Nov. 5, 2008); *see* D.I. 18 at 17-18 (Zond's brief in support of the motion to dismiss, citing *Innovative Therapies*).

There is no equivalent conduct here. TSMC has never engaged in any meaningful settlement negotiations with Zond, on either these Group Two Patents at issue here or the earlier Group One Patents at issue in the 13-cv-11634 Action in Massachusetts.[4]  More importantly, TSMC has never suggested, in words or conduct, that Zond should postpone any suit so that the parties can work things out without litigation.  Zond's June 5 letter was sent unilaterally, unsolicited, and on its face made an unreasonable and implausible demand for response within, at most, 1.5 business days.  Further, Zond's threat of further litigation on patents never before brought to TSMC's attention, and apparently not worthy of asserting in Zond's first offensive against TSMC, reeked of tactical threat.  Zond apparently thought the mere threat of more litigation would cause TSMC to run to the settlement table.  But TSMC does not take licenses to patents it does not need.  Thus, having no obligation to engage with Zond or to operate on its preferred timetable, TSMC investigated the additional Group Two Patents, confirmed they were far removed from anything TSMC does, and simply exercised the rights afforded to it under the

---

[4]    On December 6, 2013, in connection with the 13-cv-11634 Action, Zond sent a letter under Fed. R. Evid. 408 proposing some general terms for settlement and giving December 31, 2013 as the deadline for acceptance.  On December 23, TSMC, in a short letter response, rejected the proposal and told Zond that TSMC believed the proposed terms were so excessive as to indicate a lack of good faith.  Zond never responded.
    On June 5, 2014, Zond sent the threat letter that prompted this declaratory judgment action over the Group Two Patents.  After this action was on file, on June 9, TSMC sent Zond a letter response, indicating that this suit had been initiated and stating that if Zond were serious about a negotiated resolution, it should make a formal, written, good-faith settlement proposal.  To date, Zond has not provided any further proposal.

Declaratory Judgment Act.  That is not bad faith, but the legitimate exercise of rights under the law.

**B.      Zond's Discussion of the § 1404 Factors Ignores this Court's Transfer Law and Mischaracterizes the Procedural History in Massachusetts**

Apart from the "anticipatory filing" argument, Zond spends the rest of its papers arguing that the § 1404 factors justify transfer to Massachusetts, but this discussion is equally problematic.  Zond ignores facts critical to the transfer analysis (Zond is incorporated in Delaware); mischaracterizes its infringement theories (in an effort to eliminate TSMC Technology, a Delaware corporation, from consideration); places substantial weight on factors this Court has already ruled are not so important (location of employees and documents); and greatly overstates the Massachusetts court's familiarity with the patents and patented technology. There is no sound reason favoring Massachusetts over the first-filed forum, Delaware.

**1.      Zond's Incorporation in Delaware—which Zond Ignores—Carries "Substantial Weight" in the Transfer Analysis**

Zond first argues that the TSMC plaintiffs "have no connection to Delaware" because the one of them incorporated in Delaware, TSMC Technology, should have no apprehension that Zond will sue it over alleged infringing activity.  (D.I. 14 at 15-16).  While this is demonstrably wrong (see § II.B.2, *infra*), Zond has an even more fundamental problem—Zond itself is a Delaware company.   Although not "dispositive" in the § 1404 analysis, a defendant's incorporation in Delaware nonetheless is entitled to "substantial weight" in favor of this forum. *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012) (hereinafter "*Altera*").   Indeed, a "long line of cases from this District . . . make plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has chosen freely to

create itself." *Id.*; *see also, e.g.*, *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001).

Facing an "uphill climb," on a factor that is entitled to "substantial weight," Zond chooses silence. Nowhere in Zond's brief is its Delaware incorporation mentioned, not even in the background facts. (D.I. 14 at 7).[5] In this Court, "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *Altera*, 842 F. Supp. 2d at 756. Zond makes no such showing, and the alleged burdens its brief does reference—the location of Zond employees and records— not only fail to be "unique or unexpected," this Court has consistently rejected the notion that they are due anything more than minimal weight. Indeed, on the facts here, these factors have no weight in favor of Massachusetts. *See* § II.B.3 *infra*. Whatever the status of TSMC Technology, Zond's incorporation in Delaware provides substantial and strong weight for maintaining this dispute in Delaware.

> **2. TSMC Technology Was Rightly Concerned That It Would Be Subject to Zond's Broad and Indiscriminate Infringement Theories Over "28 nm and 20 nm nodes"**

In its effort to diminish TSMC Technology, Zond raises two points, expressed most clearly in Zond's motion to dismiss (D.I. 18 at 14-19). Both are equally meritless.

First, Zond asserts that TSMC Technology could not, as a matter of declaratory judgment law, have sufficient apprehension of infringement suit because there was no "interaction between Zond and TSMC Tech." (D.I. 18 at 15). For decades, however, the Federal Circuit has held that apprehension of suit can exist even without any direct interaction between the patentee and the declaratory plaintiff: "If the circumstances warrant, a reasonable apprehension of suit may be

---

[5]     All Zond says is that "Zond is a small startup with its principal place of business in Mansfield, Massachusetts." (D.I. 14 at 7).

found in the absence of *any* communication from defendant to plaintiff." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) (emphasis in original). The circumstances here so warrant, as explained immediately below, so Zond's legal argument about its lack of direct interaction with TSMC Technology is a non-starter.

Zond's other argument is that TSMC Technology is not implicated "in any potential infringing activity." (D.I. 18 at 15). Some background first. From the start of its litigation against TSMC (in Massachusetts, on the Group One Patents), with respect to alleged infringing activity, Zond has focused on the manufacture of semiconductor circuits with "28 and 20 nm [nanometer] and smaller nodes." (D.I. 19 ¶ 40 in the 11634 Action).[6] Zond's apparent belief is that circuits with nodes this small must "employ Zond's patented technology for generating and using strongly ionizing plasmas in a manufacturing environment." (*Id.*). Indeed, these "circuit devices at the 28 and 20 nm and smaller nodes" are how Zond's operative Massachusetts complaint defines the "TSMC Infringing Products." (*Id.*). Zond's June 5 threat letter asserting the Group Two Patents continues in that identical vein, insisting that "the same accused TSMC products and processes" allegedly infringe the newly asserted Group Two Patents. (D.I. 8, Ex. B).

As explained in TSMC's injunction papers, TSMC Technology is involved in the design of 28 nanometer and smaller devices; specifically, Richard Thurston, a member of TSMC Technology's board of directors, explained that the company "is involved in research, developing, and designing integrated circuits, including the design of aspects of 28 nanometer and smaller products." (*Id.* at ¶ 6). This involvement in the design of the accused circuit products—"the 28 nanometer and smaller" products—certainly gave TSMC Technology reason

---

[6]     According to Zond's complaint in the Group One Patents case in Massachusetts, "nodes" are the "smallest part of a transistor" in a semiconductor circuit. (D.I. 19 ¶ 39 in the 13-cv-11634 Action). A nanometer, abbreviated "nm," measures length or thickness.

to fear infringement charges from Zond, particularly in light of Zond's infringement theories in Massachusetts against entities in the TSMC family.

To get around this problem, Zond mischaracterizes its past infringement assertions. Because TSMC Technology is not involved in the importation of circuits into the United States, Zond argues that its only theories of infringement against any TSMC entity are limited to importation under § 271(g). For instance, Zond cites to its operative Massachusetts complaint and characterizes it as premised on a § 271(g) theory only: "amended complaint alleging [sic, accusing] TSMC of only direct infringement under 271(g)." (D.I. 18 at 17). But Zond's pleading is not so limited: Taking the first patent as an example, Zond alleges direct infringement by TSMC not only through importation, but through "making, using, offering to sell, selling, and/or importing into the United States, without authority, TSMC Infringing Products, including without limitation under 35 U.S.C. 271(g)." (D.I. 19 ¶ 100 in the 13-cv-11634 Action, D. Mass. (emphasis added)). Zond also alleges indirect infringement theories against the TSMC entities, including that "TSMC has been inducing infringement" on the part of "OEMs [original equipment manufacturers] and ODMs [original design manufacturers]." (*Id.* at ¶ 101). And Zond's June 5 threat letter is not limited in its infringement-by-importation charges either; the letter makes blanket reference to infringement—"TSMC infringes several other Zond patents," "TSMC's continued infringing activities"—without any mention of § 271(g). (D.I. 8, Ex. B).

Moreover, Zond has shown a willingness to sue without discrimination any TSMC entity it might suspect of being implicated in direct or indirect infringement. Its original complaint against TSMC in Massachusetts, for instance, included two entities—TSMC Development, Inc. and WaferTech, LLC (D.I. 10 in the 13-cv-11634 Action, D. Mass)—that Zond dropped from the suit a few weeks later. TSMC Development is actually an investment entity (as TSMC

explained to Zond in correspondence) and thus has no tie to any alleged infringing activity. But TSMC Technology—a company actually involved in the development of 28 nm and smaller devices—surely had reason to be concerned about being charged with infringement too.

### 3. Zond's Heavy Emphasis on Witness and Document Location Ignores That These Factors Carry No Weight in Delaware

Zond also tries to play up as significant three factors—(1) the location of Zond's two employee witnesses, (2) the location of one third-party witness, and (3) the location of Zond's "books and records." But this Court has already instructed that each of these factors in ordinary circumstances carries little if any weight in the transfer analysis—and on the facts of this case, should carry none.

Zond first argues that its two "employees are located in Massachusetts," favoring transfer there. (D.I. 14 at 16). This Court has held the opposite—this factor is given "no weight." *Altera*, 842 F. Supp. 2d at 757. "Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Id.*

Zond next asserts that one third party, Dr. Rauschenbach, the attorney who prosecuted the patents-in-suit, has an office in Rhode Island, making Massachusetts the favored forum. (D.I. 14 at 17). But for this factor to matter, Zond has to show at least three things under this District's transfer law: (1) that Dr. Rauchenbach has information relevant to one of the claims or defenses in the suit; (2) that he will refuse to appear voluntarily for trial without a subpoena;[7] and (3) that

---

[7] "Here, there is no evidence from which the Court can conclude that necessary trial witnesses will refuse to appear in Delaware for trial without a subpoena." *Altera*, 842 F. Supp. 2d at 758.

even if he does refuse to appear, his deposition testimony cannot serve as an adequate substitute.[8] Zond has not made this showing. The relevance of Dr. Rauchenbach's testimony is not at all clear, particularly since TSMC has not presently pled an inequitable conduct defense (and Zond says nothing in its brief to indicate that it believes inequitable conduct issues will arise in this dispute). Moreover, Zond's papers do not include any statement from Dr. Rauschenbach that he refuses to travel to Delaware. Zond includes only a printed copy of a webpage from Dr. Rauschenbach's website, listing Newport, Rhode Island as his office location. But this office location is a naked fact that, without more, is irrelevant to the § 1404 inquiry.

Finally, Zond asserts that Massachusetts is preferred because "all of Zond's books and records that may contain evidence relevant to this case" are located there. (D.I. 14 at 16). In *Altera*, this Court held that, in ordinary circumstances, the location of documents "should be given little weight," particularly because of advances in electronic transmission and storage technology. *Altera*, 842 F. Supp. 2d at 759. Here, even a "little weight" is too much. Unlike in *Altera*, Zond has not identified any specific documents, just "books and records" generally. Even then, Zond hedges that these documents "may contain" relevant evidence, and does not establish that they actually do. And finally, in this District, it is the location of the accused infringer's records that principally matters, not the patentee's, because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Altera*, 842 F. Supp. 2d at 758-59. Zond has not pointed to any relevant TSMC documents located in Massachusetts—because none are located there. Like the others, this factor is irrelevant and does not favor transfer to Delaware.

---

[8]    "If such witnesses will not appear at trial, their testimony can always be compelled through a subpoena . . . While deposition testimony is not a complete substitute for live trial testimony, it is a fallback that in almost all instances will prevent a miscarriage of justice." *Altera*, 842 F. Supp. 2d at 758.

### 4. Zond Overstates Judge Young's Familiarity With the Patented Technology

Finally, Zond argues for transfer as a matter of judicial economy because Judge Young has purportedly gained "familiarity . . . with the accused semiconductor manufacturing processes and Zond's related patents" in the earlier 13-cv-11634 Action over the Group One Patents. (D.I. 14 at 5-6). In the opening brief (D.I. 8 at 15), TSMC used Judge Mariana Pfaelzer's experience with the Cabilly II biotechnology patent as an example of the depth of familiarity and experience that could conceivably justify departure from the first-to-file rule. (D.I. 8 at 15-16, citing *Human Genome Sciences Inc. v. Genentech, Inc.*, Civ. No. 11-082-LPS, 2011 WL 2911797, at *10 (D. Del. July 18, 2011)). Judge Pfaelzer presided over various Cabilly II litigations for nine years, including "four litigations" during which she "issued three claim construction orders, heard fourteen summary judgment motions" and conducted "nine hearings." *Id.*

In contrast, the docket in the 13-cv-11634 Action shows that Judge Young's familiarity with the patents-in-suit does not run nearly as deep. As an initial matter, none of the Group Two Patents involved in this Delaware case were asserted in the 13-cv-11634 Action, so Judge Young could not have developed experience with them. But even as to the Group One Patents that were at issue in Massachusetts, Judge Young never reached the technology tutorial, *Markman* briefing or hearing, or summary judgment stage. As shown below, when one or the other party did ask for Judge Young's substantive involvement—on three key occasions, (1) TSMC's Rule 12(b)(6) motion to dismiss, (2) Zond's motion to compel document production and manufacturing inspection, and (3) TSMC's motion to stay pending *inter partes* review (IPR)—the arguments nowhere approached a deep dive into the patents or the technology.

TSMC's two motions referenced the patented technology (and the accused products) at only the highest levels. By definition, TSMC's Rule 12(b)(6) motion focused on pleading

requirements and Zond's complaint. The Rule 12(b)(6) motion did not implicate the underlying patented technology; it was directed to the face of the complaint. (D.I. 32-33).[9] The motion raised questions about, for example, whether Zond had pled sufficient pre-suit knowledge of the patents-in-suit so as to permit claims for indirect and willful infringement to proceed—in other words, pleading issues that this Court routinely faces, regardless of the substance or details of the technology. *See, e.g.*, *Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012). In fact, at the Massachusetts hearing on TSMC's Rule 12(b)(6) motion (which was transcribed in only 16 single, non-minuscript pages), the only references to the technology were that "TSMC Limited makes semiconductor chips in Taiwan" and co-defendant "Fujitsu then puts those semiconductor chips in products." (D.I. 50 at p. 8).[10]

Similarly, TSMC's motion to stay focused on the early stage of the litigation and the fact that Judge Young had not had to invest the time to become skilled in the patents or the technology. The motion simply discussed the fact that IPR petitions had been filed, without going into the substance of the patents, the patented technology, or the prior art. (D.I. 83-84). And Judge Young granted the stay in a one-line electronic order without addressing the patents or technology: "ELECTRONIC ORDER entered: allowed. The case is ordered administratively closed . . . ." (D.I. 123).[11]

---

[9] To make the citations in this section cleaner, until otherwise noted, all D.I. citations from here onward are to the docket in the earlier Massachusetts 13-cv-11634 Action.

[10] Judge Young orally denied the motion (except that he dismissed the willful infringement allegations) on page 13 of the transcript (D.I. 50), memorialized in electronic clerk's notes on the docket (D.I. 48: "ELECTRONIC Clerk's Notes for proceedings held before Judge William G. Young: Motion Hearing held on 11/26/2013 . . . After hearing from counsel, the Court enters an Order denying 32 TSMC's Motion to Dismiss for Failure to State a claim . . . The claim for willful infringement is dismissed without prejudice.").

[11] Judge Young initially denied the motion to stay on May 29 (D.I. 121), but upon TSMC's renewal, he granted it.

The only motion to Judge Young that can be argued to have touched on the accused technology is Zond's motion to compel inspection of TSMC's Taiwanese semiconductor manufacturing facilities, including inspection of the "magnetron sputtering equipment." (D.I. 70-71). Although the motion papers discussed the accused technology, the dispute was a procedural and business one—*i.e.*, whether it was necessary for Zond to shut down TSMC's ongoing manufacturing operations to allow for Zond's inspection, or whether the information Zond sought could be obtained by other, less intrusive means, such as through recipe books and other technical literature documenting the process and/or through depositions.[12] After briefing closed, Judge Young granted the motion, via one-sentence electronic order: "MOTION ALLOWED. Such inspection shall occur within 30 days of the date of this order." (D.I. 111). That order does not indicate close consideration of the technology.

More importantly, the Massachusetts court never received a tutorial on Zond's patented technology or a *Markman* brief, never held a claim construction hearing or issued a claim construction order, and was never asked to consider whether Zond's asserted claims read on the manufacturing process discussed in the inspection motion. For transfer based on prior familiarity with the patents-in-suit to be warranted, one would expect the prior court to have developed considerable experience and expertise in the patents-in-suit, the prosecution history, the prior art, and the underlying patented technology. That is simply not the case here.

---

[12]     In attempting to explain the necessity, Zond's papers said it was particularly interested in the "power supplies used by TSMC" and other "critical information (e.g., the actual settings, operating conditions, and equipment connections, as well as the actual timing of the processes)." (D.I. 71 at 1-2). For its part, TSMC opposed Zond's motion by arguing that Zond had failed to meet its heightened burden for an inspection when less intrusive discovery could be taken. To that end, TSMC submitted (under seal) affidavits from its engineers that included further details about the semiconductor manufacturing process which sought to show that the process was adequately documented in TSMC's existing technical literature that had already been produced to Zond, that TSMC followed the process flow as documented, and that any changes to that flow would be documented in change notices.

In the end, Zond bears the burden of proving a need to transfer this first-filed case away from Delaware. "[T]he burden rests squarely on the party seeking a transfer to establish that a balancing of proper interests weighs in favor of the transfer." *Altera*, 842 F. Supp. 2d at 752 (internal quotations omitted); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("a transfer is not to be liberally granted."). Merely asserting, as Zond does, without any basis, that a court in another district is "familiar" with the patents and the accused technology is not nearly enough. Zond has offered no compelling or persuasive reason to remove this dispute from Delaware, and here it should remain.

## III.  CONCLUSION

For all of the above reasons, and in TSMC's opening brief in support of its motion to enjoin (D.I. 8), TSMC respectfully requests that (1) Zond be enjoined, under the first-to-file rule, from continuing its New 14-cv-12438 Action in Massachusetts; and (2) Zond's co-pending motion to transfer venue to the District of Massachusetts (D.I. 14) be denied.


Dated:  July 25, 2014

**DUANE MORRIS LLP**


/s/ Richard L. Renck
Richard L. Renck (#3893)
222 Delaware Avenue, Suite 1600
OF COUNSEL:                              Wilmington, DE 19801-1659
Phone:  302-657-4900
Fax:  302 657 4901
L. Norwood Jameson                       Email: rlrenck@duanemorris.com
David Dotson
**DUANE MORRIS LLP**
1180 W. Peachtree St., Suite 700
Atlanta, GA 30309                        *Attorneys for Plaintiffs TSMC Technology,*
Phone: (404) 253-6900                    *Inc., Taiwan Semiconductor Manufacturing*
Fax:    (404) 253-6901                   *Company, Limited and TSMC North America*
Email: wjameson@duanemorris.com          *Corp.*
Email: dcdotson@duanemorris.com

Anthony J. Fitzpatrick
Patricia R. Rich
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone (857) 488-4200
Facsimile: (857) 401-3018
Email: ajfitzpatrick@duanemorris.com
Email: prrich@duanemorris.com

Richard C Kim
**DUANE MORRIS LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: (619) 744-2200
Facsimile: (619) 744-2201
Email: rckim@duanemorris.com

R. Terry Parker
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 1036-4086
Telephone: (212) 692 1000
Facsimile: (212) 692 1020
Email: tparker@duanemorris.com

Aleksander J. Goranin
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: 1 215 979 1000
Facsimile: 1 215 754 4683
Email: agoranin@duanemorris.com