## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TSMC TECHNOLOGY, INC., TAIWAN )
SEMICONDUCTOR MANUFACTURING )
COMPANY, LIMITED and TSMC )
NORTH AMERICA CORP., )
                          )
        Plaintiffs, )
                         )
     v. )     Civil Action No. 14-721-LPS-CJB
                         )
ZOND, LLC, )
                         )
        Defendant. )

### REPORT AND RECOMMENDATION

Presently before the Court are: (1) Plaintiffs TSMC Technology, Inc. ("TTI"), Taiwan

Semiconductor Manufacturing Company, Limited ("TSMC Ltd."), and TSMC North America

Corp.'s ("TSMC NA") (collectively, "Plaintiffs" or "TSMC") "Motion to Enjoin Zond LLC from

Maintaining a Later-Filed Action in the District of Massachusetts," (D.I. 7) (the "Motion to

Enjoin"); and (2) Defendant Zond, LLC's ("Zond" or "Defendant") "Motion to Transfer Venue

of this Action to the District of Massachusetts Pursuant to 28 U.S.C. § 1404(a)," (D.I. 13) (the

"Motion to Transfer, " and collectively with the Motion to Enjoin, the "Motions").

For the reasons that follow, the Court recommends that Plaintiffs' Motion to Enjoin be

GRANTED, and orders that Zond's Motion to Transfer be DENIED.[1]

## I.    BACKGROUND

---

[1]    Plaintiffs' Motion to Enjoin is a dispositive motion and, for that reason, this
document is titled as a "Report and Recommendation." *See Pragmatus AV, LLC v. Yahoo! Inc.*,
Civil Action No. 11-902-LPS-CJB, 2013 WL 4629000, at *1 n.1 (D. Del. Aug. 28, 2013).
Recent precedent in our Court indicates that a motion to transfer venue, however, should be
treated as a non-dispositive motion. *See Agincourt Gaming LLC v. Zynga Inc.*, Civil Action No.
11-720-RGA, 2013 WL 3936508, at *2 (D. Del. July 29, 2013).

## A.    Factual Background

### 1.    The Parties

TTI is a corporation organized under the laws of Delaware with a principal place of business in San Jose, California; it is an indirect subsidiary of TSMC Ltd. (D.I. 1 at ¶ 1) TSMC Ltd. is a corporation organized under the laws of Taiwan, with a principal place of business in Hsinchu, Taiwan. (*Id.* at ¶ 2) TSMC NA is a corporation organized under the laws of California, with a principal place of business in San Jose, California, and is a direct subsidiary of TSMC Ltd. (*Id.* at ¶ 3)

Zond is a limited liability company organized under the laws of Delaware, with a registered agent in this District. (*Id.* at ¶ 4) It has its principal place of business in Mansfield, Massachusetts. (D.I. 15 at ¶ 3) Zond is the owner of the various patents-in-suit in this matter: United States Patent Nos. 6,806,651 ("the '651 Patent"), 6,896,773 ("the '773 Patent"), 6,896,775 ("the '775 Patent"), 6,903,511 ("the '511 Patent"), 7,095,179 ("the '179 Patent"), and 7,446,479 ("the '479 Patent") (collectively, "the Group Two Patents"). (D.I. 1 at ¶ 5)

### 2.    Actions in the District of Massachusetts and Their Relationship to the Instant Case

In July 2013, Zond filed seven actions against seven different defendants or sets of defendants in the United States District Court for the District of Massachusetts ("District of Massachusetts"); in each case, Zond alleged infringement of seven of Zond's patents (the "Group One Patents"). (D.I. 1 at ¶ 8; D.I. 8 at 3, 7-8); *Zond, LLC v. Fujitsu Ltd. et al.*, Civil Action No. 13-cv-11634-WGY (D. Mass.) ("*Zond, LLC I*"), (D.I. 19).[2] The seven Group One Patents are

_____

[2]    Zond also alleged infringement of an eighth patent, U.S. Patent No. 8,125,155 (the "'155 Patent") in the original Complaint it filed in each of the Group One Patent cases, (*see, e.g.*,

2

different patents from the Group Two Patents, although there are relationships among them. All thirteen patents share the same inventor, Roman Chistyakov, and relate to the subjects of semiconductor manufacturing and plasma discharge technology. One of the Group One Patents, U.S. Patent No. 7,808,184 ("the '184 Patent"), is a continuation of one of the Group Two Patents, the '179 Patent, and they share an identical specification. (*See generally* '184 Patent; '179 Patent) Another Group One Patent, U.S. Patent No. 6,806,652 ("the '652 Patent"), is a continuation-in-part of a Group Two Patent, the '651 Patent, and their specifications are nearly identical. (*See generally* '652 Patent; '651 Patent)

Additionally, in the first of the seven Group One Patent actions, which Zond filed against The Gillette Company and The Procter & Gamble Company (the "Gillette Action"), Zond not only asserted the seven Group One Patents, but also asserted two Group Two Patents: the '773 Patent and the '775 Patent. (D.I. 8 at 3, 7-8) Ultimately, the seven Group One Patent actions were assigned to five different United States District Judges in the District of Massachusetts; the Gillette Action was assigned to United States District Judge Denise J. Casper. (*Id.* at 7-8)

In another of those Group One Patent actions (the "First TSMC Massachusetts Action"), TSMC Ltd. and TSMC NA were sued as defendants, as were two other defendants that remain in that case: Fujitsu Semiconductor Limited and Fujitsu Semiconductor America, Inc. (collectively, the "Fujitsu entities"). (*Id.* at 8) The First TSMC Massachusetts Action was assigned to United States District Judge William G. Young; Judge Young was not assigned to oversee any of the

---

*Zond, LLC I*, D.I. 1), but these allegations were dropped in Amended Complaints later filed in all but one of these cases. (*See, e.g., id.*, D.I. 19) The parties make no reference to the '155 Patent in their briefing, and thus the Court will make no further reference to it in this Report and Recommendation.

other six cases. (*Id.*) On June 2, 2014, the First TSMC Massachusetts Action was

administratively closed, until the conclusion of *inter partes* review proceedings occurring before

the United States Patent and Trademark Office ("PTO") or May 9, 2016, whichever came first.

(D.I. 1 at ¶ 8; D.I. 8 at 8 (citing *Zond, LLC I*, D.I. 124)) Judge Young later clarified that the case

may be reopened earlier than those dates as to any claims not accepted for *inter partes* review.

(D.I. 8 at 8 (citing *Zond, LLC I*, D.I. 129))

At the time of the filing of the instant Motions, of the other six Group One Patent cases in

the District of Massachusetts, one case had been settled and dismissed, two had been stayed

pending *inter partes* review, and three were ongoing, with motions to dismiss or stay pending in

each. (D.I. 8 at 7-9) As of the current date, two of these six cases have been settled and

dismissed, and the other four all are now stayed (for differing periods of time) pending *inter

partes* review proceedings. *See Zond, Inc. v. The Gillette Co., et al.*, Civil Action No. 13-cv-

11567-DJC (D. Mass.), (D.I. 120) (stay pending *inter partes* review); *Zond, LLC v. Intel Corp.*,

Civil Action No. 13-cv-11570-RGS (D. Mass.), (D.I. 130) (dismissal); *Zond, LLC v. Advanced

Micro Devices, Inc., et al.*, Civil Action No. 13-cv-11577-LTS (D. Mass.), (D.I. 74, 82) (stay

pending *inter partes* review); *Zond, Inc. v. Toshiba Am. Elec. Components, Inc., et al.*, Civil

Action No. 13-cv-11581-DJC (D. Mass.), (D.I. 70) (stay pending *inter parties* review); *Zond,

LLC v. SK Hynix, Inc., et al.*, Civil Action No. 13-cv-11591-RGS (D. Mass.), (D.I. 68)

(dismissal); *Zond, LLC v. Renesas Elecs. Corp., et al.*, Civil Action No. 13-cv-11625-NMG (D.

Mass.), (D.I. 44) (stay pending *inter partes* review). None of those Group One Patent cases

proceeded to the *Markman* stage before being dismissed or stayed. (D.I. 8 at 8-9) The District of

Massachusetts has confirmed by Order that none of the remaining Group One Patent cases will

be consolidated; instead, all will proceed on different schedules. *Zond, Inc. v. The Gillette Co., et al.*, Civil Action No. 13-cv-11567-DJC (D. Mass.), (D.I. 100); (D.I. 8 at 9).

### 3.    The Instant Action and the Second TSMC Massachusetts Action

On Thursday, June 5, 2014, three days after the First TSMC Massachusetts Action was stayed, counsel for Zond sent a letter to TSMC Ltd. and TSMC NA (the "June 5 letter"). (D.I. 1 at ¶ 9) The June 5 letter stated that, based on investigation, Zond believed that TSMC Ltd. and TSMC NA infringed the six Group Two Patents. (D.I. 1, ex. G at 1) Zond asserted that it "intend[ed] to file next week a new action in the District of Massachusetts, related to the [first TSMC Massachusetts] Action, involving the same parties and the same accused TSMC products and processes, including products sold by TSMC to many of its customers." (*Id.*) The letter gave these TSMC entities until "Noon Eastern time, on Monday, June [9], 2014[,]" to contact Zond's counsel regarding obtaining a license to the patents. (*Id.* at 2)

Instead of contacting Zond's counsel, Plaintiffs filed the instant case in this Court on Sunday, June 8, 2014. (D.I. 1; D.I. 8 at 5) (The filing was assigned a filing date of Friday, June 6, 2014, on this Court's docket). (D.I. 1) With the instant action, Plaintiffs sought a declaratory judgment that they do not infringe, directly or indirectly, each of the six Group Two Patents. (*Id.* at ¶¶ 14-37)

The next day, Monday, June 9, 2014, Zond filed a Complaint in the District of Massachusetts, alleging that TSMC Ltd. and TSMC NA directly and indirectly infringe the six Group Two Patents ("the Second TSMC Massachusetts Action"). (D.I. 8 at 5)[3] That suit is

---

[3]    Plaintiffs explain that because the filing was submitted after the e-filing deadline of 6:00 p.m. on June 9, 2014, the Complaint in the Second TSMC Massachusetts Action was dated June 10, 2014. (*Id.*)

captioned *Zond, LLC v. Fujitsu Semiconductor Ltd. et al.*, Civil Action No. 14–cv-12438–WGY

(D. Mass.) ("*Zond, LLC II*"). As with the First TSMC Massachusetts Action, Zond's new suit

did not name TTI as a defendant, but did name the Fujitsu entities as defendants. (D.I. 8 at 5-6)[4]

Zond noticed the Second TSMC Massachusetts Action as being related to the First TSMC

Massachusetts Action, and so the Second TSMC Massachusetts Action was also assigned to

Judge Young. (*Id.*; D.I. 14 at 1, 4)

On October 9, 2014, Judge Young entered a Scheduling Order in the Second TSMC

Massachusetts Action. (D.I. 35 & ex. A) A claim construction hearing is currently scheduled for

the week of April 13, 2015, fact discovery is set to close on April 24, 2015 and trial is scheduled

for October 2015. (*Id.* & ex. A at 11-12) In that matter, the case as to the Fujitsu entities has

been stayed. (*Zond, LLC II*, D.I. 59)

**B.    Procedural Background Regarding the Instant Case**

As noted above, on June 8, 2014, Plaintiffs commenced the instant action. (D.I. 1) On

June 19, 2014, Plaintiffs filed the Motion to Enjoin, which seeks to enjoin the Second TSMC

Massachusetts Action. (D.I. 7) On July 8, 2014, Defendant filed the Motion to Transfer, seeking

transfer of the instant action to the District of Massachusetts. (D.I. 13)

On October 16, 2014, Chief Judge Leonard P. Stark referred this case to the Court to hear

---

[4]    The allegations against the Fujitsu entities in the second TSMC Massachusetts
Action are closely tied to Zond's allegations against TSMC Ltd. and TSMC NA, as they are
driven by Zond's claims that the TSMC entities "employ[] Zond's patented technology in the
manufacture of all TSMC wafers that, when separated into accused infringing chips, are
incorporated into" the Fujitsu entities' products. (*Zond, LLC II*, D.I. 1 at ¶ 23) Zond specifically
claims that TSMC's accused products "include, without limitation, all TSMC wafers produced
by an infringing process that, when separated into individual infringing chips, are incorporated
into any and all Fujitsu Infringing Products." (*Id.* at ¶ 26)

and resolve all pre-trial matters, up to and including the resolution of case-dispositive motions.

(D.I. 28) On November 4, 2014, the Court heard oral argument on a number of pending motions,

including the Motion to Transfer and Motion to Enjoin.  (D.I. 33 (hereinafter "Tr."))[5]

## II.   LEGAL STANDARDS

### A.   The Motion to Enjoin and the First-Filed Rule

The United States Court of Appeals for the Federal Circuit has adopted what is known as

the "first-filed" rule in patent cases.[6]  That Court has explained that it prefers "to apply in patent

cases the general rule whereby the forum of the first-filed case is favored, unless considerations

of judicial and litigant economy and the just and effective disposition of disputes, require

otherwise." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *rev'd on*

*other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  If applied, the rule counsels that

a later-filed action involving the same controversy should be dismissed, transferred, or otherwise

enjoined in favor of the first-filed action. *See id.* at 938; *Nexans Inc. v. Belden Inc.*, 966 F. Supp.

2d 396, 403 (D. Del. 2013).  Adoption of this rule serves to prevent a multiplicity of actions and

to achieve resolution in a single lawsuit of all disputes arising from common matters.

*Genentech*, 998 F.2d at 938; *Corixa Corp. v. IDEC Pharms. Corp.*, No. CIV.A.01-615-GMS,

---

[5]      Aside from the motion to transfer, Zond also has filed a pending motion to dismiss the Complaint on various grounds. (D.I. 17) The Court will resolve that motion in a subsequently issued Report and Recommendation.

[6]      The Federal Circuit has explained that its own law applies to "injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004); *see also Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995) ("The proper relationship between an action under [the Declaratory Judgment Act] for a declaration of patent rights and a later-filed infringement suit triggers this court's special responsibility to foster national uniformity in patent practice[.]").

2002 WL 265094, at *1 (D. Del. Feb. 25, 2002). "The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action." *Genentech*, 998 F.2d at 938.

Under Federal Circuit law, as set out in *Genentech, Inc. v. Eli Lilly and Co.*, 998 F. 2d 931 (Fed. Cir. 1993), exceptions to the first-filed rule are "not rare" and are made when justice or expediency requires, though there must be "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938. In *Genentech*, the Federal Circuit further explained that "[s]uch reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* The Federal Circuit has otherwise noted that another such "sound reason" would be a situation in which "forum shopping" was the sole motivation for the plaintiff's filing of the first case. *Id.*; *see also Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). And it has also stated that a district court can consider, as part of its analysis, whether the first-filed suit was an anticipatory suit (that is, "whether a party intended to preempt another's infringement suit"). *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005). However, the Federal Circuit has explained that whether a declaratory suit was anticipatory should be but "one factor in the analysis[;]" it has cautioned that a court should not rely "solely on the anticipatory nature" of a suit when ruling that a first-filed declaratory judgment action should give way to a second-filed infringement suit. *Id.*

The Federal Circuit further expounded upon how a district court should determine whether an exception to the first-filed rule should be made in *Micron Tech., Inc. v. Mosaid*

8

*Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) ("*Mosaid Techs., Inc.*"). The *Mosaid Techs., Inc.*

Court explained that when a district court analyzes whether to permit the first-filed declaratory

judgment action to go forward (or to decline to hear it in favor of a later-filed patent infringement

action in another forum), it should not apply any "categorical rules." *Mosaid Techs., Inc.*, 518

F.3d at 904. Instead, the court should consider the "real underlying dispute: the convenience and

suitability of competing forums." *Id.* In doing so, it "must weigh the factors used in a transfer

analysis as for any other transfer motion[,]" such that "when the discretionary decision is

presented after the filing of an infringement action, the jurisdiction question is basically the same

as a transfer action under [28 U.S.C.] § 1404(a)." *Id.*; *but see Innovative Therapies, Inc. v.*

*Kinetic Concepts, Inc.*, 599 F.3d 1377, 1385 (Fed. Cir. 2010) (noting that in *Mosaid Techs., Inc.*,

the Federal Circuit did not hold that "forum convenience is the dominant consideration" relevant

to a court's exercise of discretion in every case).

## B.    The Motion to Transfer

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.[7] It provides

that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[S]ection

1404(a) was intended to vest district courts with broad discretion to determine, on an

individualized, case-by-case basis, whether convenience and fairness considerations weigh in

---

[7]        In analyzing a motion to transfer in a patent case, it is the law of the regional
circuit that applies. *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp.
2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331
(Fed. Cir. 2011)).

favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)).

The United States Court of Appeals for the Third Circuit has emphasized that when considering a motion to transfer venue pursuant to Section 1404(a), "courts normally defer to a plaintiff's choice of forum" and thus "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879-80 (internal quotation marks and citations omitted). This general principle, drawn from the historic respect accorded a plaintiff's choice of venue, suggests that "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks and citation omitted).

The party seeking a transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer[.]" *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor of defendant*, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009). Accordingly, "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF, 2010 WL 3037478, at *2 (D. Del. July 30, 2010); *see also Illumina, Inc. v. Complete Genomics, Inc.*, Civil Action No. 10-649, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010).

The Third Circuit has observed that, in undertaking this transfer analysis, "there is no definitive formula or list of factors to consider[.]" *Jumara*, 55 F.3d at 879. Instead, courts must analyze "all relevant factors" to determine whether "the litigation would more conveniently

10

proceed and the interests of justice be better served by transfer to a different forum." *Id.* (internal

quotation marks and citation omitted).  Nevertheless, in *Jumara v. State Farm Ins. Co.*, 55 F.3d

873 (3d Cir. 1995), the Third Circuit identified a set of private interest and public interest factors

that should be taken into account in this analysis (the "*Jumara* factors").  The private interest

factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original
> choice, [2] the defendant's preference, [3] whether the claim arose
> elsewhere, [4] the convenience of the parties as indicated by their
> relative physical and financial condition, [5] the convenience of the
> witnesses—but only to the extent that the witnesses may actually be
> unavailable for trial in one of the fora . . . and [6] the location of
> books and records (similarly limited to the extent that the files could
> not be produced in the alternative forum).

*Id.*  The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations
> that could make the trial easy, expeditious, or inexpensive, [3] the
> relative administrative difficulty in the two fora resulting from court
> congestion, [4] the local interest in deciding local controversies at
> home, [5] the public policies of the fora, . . . and [6] the familiarity
> of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.  District courts should explicitly consider each of these factors, at least to the

extent that the parties make "arguments" about them.  *In re Link_A_Media Devices Corp.*, 662

F.3d 1221, 1224 (Fed. Cir. 2011) (citing *Jumara*, 55 F.3d at 879) (noting that it would be

"improper to ignore" any of the factors in such a circumstance).

## III.   DISCUSSION

The issues relating to the pending Motions are many and nuanced.  Thus, the Court

delves into them below at some length.

In beginning its analysis, the Court will first consider whether the first-filed rule is

applicable here. Next (after finding that the rule is implicated), the Court will move on to assess

whether and to what extent any of the recognized exceptions to the rule that have been cited by

Zond apply. In undertaking that analysis, the Court will also assess how a traditional Section

1404(a) transfer analysis would come out. It does so: (1) as part of its resolution of the Motion to

Enjoin, because the Federal Circuit has suggested that considering the *Jumara* factors would be

appropriate in analyzing whether an exception to the first-filed rule should be made; and (2)

because Zond has filed the Motion to Transfer, which would require the same analysis of the

*Jumara* factors to be undertaken in any event.

### A.    Application of the First-Filed Rule

Here, in the parties' briefing, it was undisputed that the first-filed rule applies (that is, that

the subject matter of the instant case and the Second TSMC Massachusetts Action are

sufficiently close such that the rule's applicability is triggered), and that the instant action is the

"first-filed" of those two cases.[8]  (D.I. 8 at 9-11; D.I. 14 at 10-11)  The two actions are, in

essence, "mirror image" cases. That is, they involve claims of non-infringement and

infringement of the same patents made by TSMC entities and Zond, respectively, against the

---

[8]       In its briefing, Zond appeared to acknowledge that the first-filed rule is implicated
here and that the instant action was the first-filed case (with the Second TSMC Massachusetts
Action being the "second-filed" case)—it argued, however, that certain "exceptions" to the first-
filed rule applied, such that this case should not go forward and the Second TSMC Massachusetts
Action should instead.  (D.I. 14 at 10-11; D.I. 23 at 2)  Yet at oral argument, Zond's counsel
seemed to suggest, for the first time, that the First TSMC Massachusetts Action addressed the
same basic subject matter as the instant case and that *it* should be considered the "first-filed"
action.  (Tr. at 55-56)  This argument does not appear in Zond's briefs, as its counsel
acknowledged, (*id.* at 56), and thus the Court will not consider it here. *See McKesson
Automation, Inc. v. Swisslog Italia S.p.A.*, 840 F. Supp. 2d 801, 803 n.2 (D. Del. 2012) (holding
that a new argument not raised in the opening brief shall not be considered) (citing D. Del. LR
7.1.3(c)(2)); *LG Display Co., Ltd. v. AV Optronics Corp.*, Civil Action Nos. 06–726–LPS,
07–357–LPS, 2010 WL 5463305, at *4 (D. Del. Dec. 29, 2010) (same).

other.[9] *See, e.g., Nexans Inc.*, 966 F. Supp. 2d at 403 (noting that the first-filed rule applies to closely related actions including "mirror-image litigation" that, if resulting in two conflicting judgments, may require separate appeals) (citing cases). And there is no dispute that the instant action was filed one day before the Second TSMC Massachusetts Action, making it the "first-filed" of the two. *See Genentech*, 998 F.2d at 938 ("[T]he rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by reasons just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.") (internal quotation marks and citations omitted). The parties' dispute therefore centers on whether an exception to the first-filed rule should be made here.

## B.     Exceptions to the First-Filed Rule

In articulating why an exception to the first-filed rule should be made, Zond cites to two of the circumstances, referenced above, that the Federal Circuit has considered as part of this calculus: "(1) the exception for anticipatory filings and (2) the exception for forum shopping." (D.I. 14 at 10) Additionally, it asserts that "an analysis of the [Section] 1404(a) balancing factors

---

[9]      As noted above, the TSMC defendants in the Second TSMC Massachusetts Action are Plaintiffs here, while Zond, the plaintiff in the other action, is the Defendant here. TTI, a TSMC-related Plaintiff here, is not a defendant in the Second TSMC Massachusetts Action, and the two Fujitsu entities are defendants in that action but are not involved in this case. Zond has not suggested that the presence of TTI or the Fujitsu entities in one of the respective actions, but not the other, should alter the conclusion that this case is the first-filed action over the same subject matter. *See Fuisz Pharma LLC v. Theranos, Inc.*, 11-1061-SLR-CJB, 2012 WL 1820642, at *4, *6 n.9 (D. Del. May 18, 2012) (noting that the first-filed rule does not require exact unanimity of parties, and finding that the rule applied when the same dueling parties were involved in both cases at issue, even where the case in the proposed transferee jurisdiction involved certain additional related parties), *report and recommendation adopted*, 2012 WL 2090622 (D. Del. June 7, 2012).

. . . also show that Massachusetts is a more appropriate venue for resolution of the disputes underlying this and [the Second TSMC Massachusetts Action]." The Court will take up each of these considerations in turn.

### 1. Anticipatory Suit

One exception to be considered under the scope of the first-filed rule is "a party['s] inten[tion] to preempt another's infringement suit"—that is, the anticipatory nature of the declaratory judgment action. *Elecs. for Imaging*, 394 F.3d at 1347. Our Court has stated that "a suit is anticipatory for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Mitek Sys., Inc. v. United Servs. Auto. Assoc.*, Civil Action No. 12–462 GMS, 2012 WL 3777423, at *3 (D. Del. Aug. 30, 2012) (internal quotation marks and citation omitted). Under this formulation, this suit is undoubtedly anticipatory. Plaintiffs filed the Complaint here following receipt of the June 5 letter from Zond, in which Zond explained that if Plaintiffs did not contact them by Monday, June 9, 2014 in order to obtain a license to the Group Two Patents, Zond planned to file suit in the District of Massachusetts later that same week. *(See* D.I. 1, ex. G at 1-2).

As noted above, however, the Federal Circuit has been clear that the fact that a suit is anticipatory, in and of itself, is not a sufficient basis to deviate from the first-filed rule. *Elecs. for Imaging*, 394 F.3d at 1347-48; *see also Mitek Sys., Inc.*, 2012 WL 3777423, at *3. The rationale behind this conclusion likely relates to the fact that when there is a real, brewing controversy between parties like these, litigation often is imminent. The Declaratory Judgment Act gives an accused infringer the ability to make the first move in that scenario—to file suit affirmatively in

14

order to clear any cloud of suspicion that might hang over it, instead of being required to wait until the patent holder sues when and where it chooses. *See, e.g., Elecs. for Imaging*, 394 F.3d at 1347-48 (noting that the "fact that [the declaratory judgment defendant] had stated a deadline for negotiations to be concluded, and that that deadline had not passed when [the declaratory judgment plaintiff] brought suit, does not deprive [that plaintiff] of the right to sue[,]" and going on to find that the anticipatory nature of such a suit was insufficient, without more, to deviate from respecting the first-filed rule); *see also Nexans Inc.*, 966 F. Supp. 2d at 404. And, as a general matter, the entire "purpose" of the first-filed rule—even in situations where a declaratory judgment suit precedes an infringement suit by a day—is to "favor[] *the right* of the first litigant to choose the forum, absent countervailing interests of justice or convenience[.]" *Genentech*, 998 F.2d at 938 (emphasis added). Unless there are sound reasons to question the first-filer's choice of forum, its "right" to pick that forum over other fora is respected via invocation of the first-filed rule. *Id.*

In arguing about the importance of the anticipatory suit exception here, Plaintiff cites prominently to the decision in *Woodbolt Distribution, LLC v. Natural Alternatives International, Inc.*, Civil Action No. 11-1266 GMS, 2013 WL 247041 (D. Del. Jan. 23, 2013). In that case, our Court, interpreting Federal circuit authority, found that the anticipatory nature of a declaratory judgment action filed in this District was one factor (among many) suggesting that deference should be given to a later-filed patent infringement suit in the United States District Court for the Southern District of Texas ("Southern District of Texas"). Yet the circumstances leading up to the filing in *Woodbolt Distribution* are meaningfully different than those at play here.

In *Woodbolt Distribution*, the parties had been engaged in "several discussions" regarding

15

allegations of patent infringement made by defendant Natural Alternatives International, Inc. ("NAI"). *Woodbolt Distribution*, 2013 WL 247041, at \*4. Those discussions began on December 6, 2011, when NAI sent declaratory judgment plaintiff Woodbolt Distribution LLC ("Woodbolt") a cease and desist letter, along with a draft Complaint; NAI warned it would file the Complaint in the Southern District of Texas by December 9, 2011, absent a resolution of the dispute. *Id.* The parties then engaged in multiple discussions regarding settlement. *Id.* Thereafter, both parties set up a conference call for December 21, 2011, in order to continue negotiations. *Id.* Yet on the very day that call was scheduled to occur, Woodbolt filed the suit in this District, in what its counsel called "a 'precautionary measure in the event that the parties [were] unable to reach an amicable agreement.'" *Id.* at \*1, \*4 (alteration in original).

The recitation of facts in *Woodbolt Distribution* read as if Woodbolt, during the run up to its anticipatory filing, acted in a manner that could be characterized as affirmatively misleading. The facts suggest that in organizing the December 21 conference call, Woodbolt was taking steps to make it seem as if further negotiations could lead to resolution of the matter without suit—in an effort to lull NAI into standing down for a while longer, and thus ensuring that Woodbolt would be able to file suit first in this District. That type of conduct leading up to the filing of an anticipatory suit might well be an important red flag—one suggesting that the first-filed suit is deserving of less respect that it otherwise might receive.

But here, the facts seem quite different than what occurred *Woodbolt Distribution*. Instead, what happened was that Zond—just three days after receiving an order that the first TSMC Massachusetts Action would be stayed pending *inter partes* review—wrote the June 5 letter, in which it threatened to file suit in the District of Massachusetts over the Group Two

Patents. That letter allowed TSMC Ltd. and TSMC NA just a few days (two of which were over

a weekend) to "reach out" to Zond's counsel to negotiate a license; if that did not happen, Zond

warned that suit would be filed immediately thereafter. (D.I. 1, ex. G. at 1-2) In response,

Plaintiffs did not attempt to lull Zond into complacency by making false or misleading

statements about the prospects for settlement without the need for a lawsuit. Nor did they

otherwise engage in anything approaching affirmative misconduct. Instead, they simply did what

the Declaratory Judgment Act gives them a right to do—they filed suit in their preferred forum.

*See, e.g., Trustco Bank v. Automated Transactions LLC*, 933 F. Supp. 2d 668, 672 (D. Del. 2013)

(noting, in enjoining a second-filed suit and declining to transfer the case to the second-filed

jurisdiction, that the fact that the plaintiff filed the instant declaratory judgment action while

knowing of defendant's preparations to sue it was "inapposite[,]" since "[p]reparations for

litigation during negotiations are commonplace and the court concludes there is no evidence of

bad faith"); *Nexans Inc.*, 966 F. Supp. 2d at 404-05 (disagreeing with defendant's assertion that

the filing of the instant suit was done "in bad faith, with a nefarious motive to gain the upper

hand in [settlement] negotiations[,]" because the suit was filed at a time when an agreement

meant to facilitate settlement negotiations had expired, when the defendant had failed to provide

certain requested information to the plaintiff, and at a point when negotiations were no longer

ongoing).

Taken together, the facts here indicate that: (1) TSMC entities and Zond had been locked

in intellectual property disputes; (2) those disputes were about to escalate; and (3) both sides

were taking tough, but fair steps in order to fully protect their rights. Under these circumstances,

the Court does not view the "anticipatory" nature of Plaintiff's filing here, in and of itself, as

17

amounting to "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938.  Indeed, it is difficult for the Court to understand why the fact that the suit was "anticipatory[,]" under the particular circumstances here, should be a factor lessening the strength of Plaintiffs' Motion to Enjoin in any way.

Ultimately, as the Federal Circuit has explained, the anticipatory nature of a suit is "merely one factor in [this] analysis." *Electronics for Imaging*, 394 F.3d at 1347-48.  And, for the reasons set out above, at best, it should be given no more than minimal consideration here.

## 2.   Forum Shopping

The Court next considers whether another cited exception to the first-filed rule applies: whether "forum shopping alone motivated the choice of sites for the first suit[.]" *Kahn*, 889 F.2d at 1080.  By "forum shopping" the Court refers to how the Federal Circuit and our Court has used the term in this context:  to describe a situation in which a party seeks to litigate in one district court, because it is "shopping" for a favorable ruling and has indication that such a ruling would not be forthcoming in an alternative venue. *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011) ("*Rambus Inc.*") (upholding a district court's finding that a defendant had engaged in "forum shopping[,]" when the defendant filed a motion to transfer the instant case to a district court that had recently issued a favorable decision on a spoliation issue, at a time after the district court in the instant case had issued the defendant an unfavorable ruling relating to that same issue).[10]  This type of judge- or court-shopping is to be "discouraged" in the

---

[10]     *Compare VideoShare, LLC v. Google, Inc.*, Civil Action No. 13-990 GMS, 2014 WL 1338713, at *2 n.2 (D. Del. Apr. 1, 2014) ("In light of the fact that the Massachusetts court had not issued a ruling unfavorable to [plaintiff, in a related case] at the time [plaintiff] filed the Delaware actions, the Court is not persuaded that [plaintiff] was 'forum shopping' or seeking any improper advantage [by filing a further suit in this District, as opposed to in federal court in

federal court system. *Rambus Inc.*, 645 F.3d at 1332.

Here, Zond asserts that this kind of forum shopping—what it calls "blatant forum shopping"—is afoot. (D.I. 14 at 6)  It attempts to bolster this claim with a number of arguments, further set forth below, each of which the Court does not ultimately find persuasive.

First, Zond asserts that forum shopping should be inferred here because TSMC Ltd. and TSMC NA "[were] frustrated by the progress of the [First TSMC Massachusetts Action.]" (D.I. 14 at 13)  As evidence, Zond cites to the fact that these Plaintiffs lost certain disputed motions in that action. (*Id.*)  Zond asserts that TSMC Ltd. and TSMC NA knew it was likely that if they filed the instant action in the District of Massachusetts, it would be assigned to Judge Young (as the Second TSMC Massachusetts Action has been). (*Id.*)  In order to avoid the force of further negative rulings by Judge Young, Zond asserts, Plaintiffs filed the instant case here. (*Id.*)

A careful review of the docket in the First TSMC Massachusetts Action demonstrates the following as to the tenor of that litigation and the resolution of the parties' disputes:

> (1) Early on in the proceeding, TSMC Ltd. and TSMC NA filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Zond's direct, indirect and willful infringement claims. The District Court, while noting its view that the

---

Massachusetts]"), *and Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 385 (D. Del. 2012) ("[T]he court declines to characterize a [plaintiff's] choice of venue as 'forum shopping' when, by moving to transfer venue, a defendant is doing the same thing—choosing a venue that it believes to be more favorable to its claims for whatever reason."), *with Ross v. Institutional Longevity Assets LLC*, Civil Action No. 12–102–LPS–CJB, 2013 WL 5299171, at *8-9 (D. Del. Sept. 20, 2013) (finding that transfer of a case was warranted in part because plaintiffs' filing in this District amounted to "forum shopping"—in that plaintiffs had previously received unfavorable decisions in a related matter in the transferee district prior to filing the instant suit, similar issues to those previously decided in the transferee district were likely to arise in the instant case, and where mirror image litigation was filed in the transferee district just after the filing of the instant case), *report and recommendation adopted*, 2013 WL 5613998 (D. Del. Oct. 11, 2013).

infringement allegations in the case did not seem strong, ultimately granted the motion in part (as to willful infringement, without prejudice) and denied it in part (as to direct and indirect infringement). (*See Zond, LLC I*, D.I. 32, 33, 48; D.I. 50 at 6, 13, 16).

(2) Zond filed two motions to compel certain discovery, prevailing on one in part and on the other in full. (*Zond, LLC*, D.I. 67, 70, 110, 111) With regard to one motion, which sought to compel production of documents and a deposition, Zond prevailed with respect to the deposition, but was unsuccessful in compelling production of documents. (*Zond, LLC I*, D.I. 110) With regard to the other motion to compel, which sought to compel inspection of certain equipment, Zond's motion was granted. (*Zond, LLC I*, D.I. 111) TSMC Ltd. and TSMC NA had not actually filed an opposition brief before this latter motion to compel was granted, due to the pending nature of a related motion to seal. (*Zond, LLC I*, D.I. 77) TSMC Ltd. and TSMC NA thereafter filed a motion for reconsideration, in which they sought to have the District Court consider that brief and certain accompanying declarations. (Tr. at 23-24; *Zond, LLC I*, D.I. 119) The District Court later reviewed those materials and the motion for reconsideration, and denied the motion. (D.I. 121)

(3) TSMC Ltd. and TSMC NA later sought a stay of the case pending final resolution of an *inter partes* review proceeding regarding each of the Group One Patents, which had been filed by another entity. (*Zond, LLC I*, D.I. 83, 84) Although the District Court initially denied that motion as premature, in doing so, it indicated that if TSMC Ltd. and TSMC NA later filed a motion to join that *inter partes* review proceeding, and if they agreed to forgo any claim of invalidity in the case, it would be inclined to grant their motion to stay. (*Zond, LLC I*, D.I. 114) Zond argued against any grant of the motion to stay under any circumstances, asserting that it would face "substantial prejudice" were the motion granted. (*Id.* at 9-10)

(4) TSMC Ltd. and TSMC NA later did file a renewed motion to stay, in which they indicated that they had now filed *inter partes* review petitions against all asserted claims of the Group One Patents, and that they would agree not to raise any issue of validity of those patents in the case if the case were stayed. (*Zond, LLC I*, D.I. 123) The District Court then granted the renewed motion to

> stay and administratively closed the case. (*Zond, LLC I*, D.I. 124)
> It later clarified the ruling by noting that the case could later be
> reopened at once "as to any claims the PTAB does not accept."
> (*Zond, LLC I*, D.I. 129).

In all, the history of this First TSMC Massachusetts Action is much more nuanced than

Zond suggests. It does not suggest a proceeding in which at every turn, TSMC Ltd. and TSMC

NA's positions faced hostility and were rejected. Instead, the record reflects that the District

Court there evenhandedly resolved disputes before it, in ways that sometimes favored Zond, and

sometimes favored the defendants. If anything, one could say that far from being "frustrated by

the progress" of that case, TSMC Ltd. and TSMC NA were ultimately pleased by its

"progress"—in that a stay of the type they sought (over Zond's strong objections) was eventually

granted. None of this is to suggest that TSMC Ltd. and TSMC NA prefer to litigate this case in

the District of Massachusetts, where Zond is headquartered; it is clear they prefer to litigate

elsewhere. (Tr. at 31-32) It is just to say that in reviewing the record of that First TSMC

Massachusetts Action, a court could not conclude that Plaintiffs are here clearly engaging in

forum shopping, in order to avoid negative future decisions that are sure to be issued by the

proposed transferee court.

Second, as further evidence of forum shopping, Zond points to TSMC Ltd. and TSMC

NA's motion in the First TSMC Massachusetts Action seeking to consolidate all of the District

of Massachusetts actions involving the Group One Patents for pre-trial purposes. (D.I. 14 at 8

(citing *Zond, LLC I*, D.I. 59)) The filing of this type of motion does not strike the Court as

suspicious. Although the motion was ultimately denied, in general, motions to consolidate patent

infringement cases for some pre-trial purposes, where the cases involve the same patents, are not

21

uncommon.[11] And the Court has no reason to disbelieve Plaintiffs' assertion that this motion was filed in the Gillette Action before Judge Casper (and not in the First TSMC Massachusetts Action pending before Judge Young)—not because TSMC Ltd. and TSMC NA were seeking to avoid proceeding before Judge Young in the future—but simply because in the District of Massachusetts, such a motion to consolidate would have been required to be filed in the first-filed of the Group One Patent cases. (D.I. 21 at 3 n.1; *Zond, Inc. v. The Gillette Co., et al.*, Civil Action No. 13-cv-11567-DJC (D. Mass.), (D.I. 26 at 2)) Indeed, as Plaintiffs report, (D.I. 21 at 3 n.1; Tr. at 12-13), the District of Massachusetts' Local Rules do appear to require this procedure, *see* D. Mass. LR 40.1(J).[12]

Third, Zond suggests that TTI's inclusion as a Plaintiff in this suit is evidence of forum shopping. Zond notes that TTI, a Delaware corporation, "was not and is not involved in litigation between the parties [in the First TSMC Massachusetts Action]" and asserts it was added to this case to "increase the likelihood that this case would 'stick' in Delaware, despite the lack of declaratory judgment jurisdiction for [TTI]." (D.I. 23 at 4-5; *see also* D.I. 14 at 5 n.2 & 6-7, 14-15) It is clear that TTI's presence as a Plaintiff in the case would benefit Plaintiffs in litigating a future transfer motion, because TTI is the only one of the three Plaintiffs that is a Delaware corporation, and because TTI's Delaware corporate status would enure to Plaintiffs'

---

[11]     In fact, at oral argument, Zond's counsel asserted that, as to this motion to consolidate, "I think to some extent, we were open to consolidation for efficiency purposes but the motion was denied." (Tr. at 67)

[12]     As Plaintiffs note, even in filing this motion for consolidation, TSMC Ltd. and TSMC NA did not seek to have the First TSMC Massachusetts Action re-assigned from Judge Young to another District Judge; instead, they only sought that the Group One Patent cases be consolidated in some way for pre-trial purposes. (Tr. at 13; *Zond, Inc. v. The Gillette Co., et al.*, Civil Action No. 13-cv-11567-DJC (D. Mass.), (D.I. 27 at 2))

benefit as to multiple *Jumara* factors. And though it does not decide the issue in this Report and Recommendation, at a minimum, the Court has skepticism as to the ultimate merit of Plaintiffs' claim that there was in fact subject matter jurisdiction as to TTI's claims for a declaratory judgment.[13]

Plaintiffs have, however, asserted that TTI's insertion as a Plaintiff here is not evidence of bad faith. In doing so, they explain that, at a minimum, they held a good faith belief that subject matter jurisdiction existed as to TTI because: (1) Zond's complaint in the First TSMC Massachusetts Action accused "'circuit devices at the 28 and 20 [nanometer] and smaller nodes'"; (2) Zond's June 5 letter accused the "'same accused TSMC products and processes'" as had been accused in the First TSMC Massachusetts Action; and (3) TTI is, in fact, involved in the research, development and design of 28 nanometer and smaller devices. (D.I. 21 at 12; *see also* D.I. 1, ex. G at 1; D.I. 8, ex. A at ¶ 6) In the Court's view, even if TTI is ultimately unsuccessful as to its claim of subject matter jurisdiction, these facts provide a sufficient bulwark against the charge that TTI's inclusion in this suit is the product of bad faith or improper filing practices.[14]

---

[13]     For this reason, and because doing so ultimately does not affect the ultimate outcome of the Court's decision below regarding the balancing of the *Jumara* factors, the Court will consider the *Jumara* factors as if TTI is not a Plaintiff in this case. The Court would be uncomfortable with an outcome as to the transfer calculus that swung on TTI's presence in the case—particularly if the Court's ultimate decision is that no case or controversy exists with regard to TTI's declaratory judgment claims. On the other hand, if the Court felt that there was sufficient evidence that TTI had been inserted into this lawsuit in bad faith, it would take that fact into account in its consideration of the first private interest *Jumara* factor below. Yet for the reasons set out herein, the Court does not have sufficient evidence of that kind of bad faith.

[14]     Zond claims that the fact that TTI is assertedly involved with the design of 28 nanometer and smaller devices is immaterial, because its "direct patent infringement claims arise under 35 U.S.C. § 271(g), which concerns products manufactured abroad according to a patented

23

In the end, due to the strength of Plaintiffs' rebuttals to Zond's arguments, and because

(as is set out further below) there was a legitimate, oft-recognized reason for Plaintiffs to file a

suit of this kind in Delaware, the Court cannot conclude that the forum shopping exception to the

first-filed rule is triggered here.

### 3.   *Jumara* Factors Relevant to a Motion to Transfer

Zond next suggests that the *Jumara* factors weigh heavily in its favor, and that this

militates in favor of denying the Motion to Enjoin and granting the Motion to Transfer. (D.I. 14

at 14-19)  The Court thus assesses the *Jumara* factors.

#### a.   Appropriateness of Transferee Venue

The first step in a transfer analysis is to determine whether this action could have been

brought in the proposed transferee venue. "The party moving for transfer bears the burden of

proving that the action properly could have been brought in the transferee district in the first

instance." *Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal

quotation marks and citation omitted).  Here, there is no dispute that the suit could have been

brought in the proposed transferee court, the District of Massachusetts, where the second-filed

suit is currently pending.  (D.I. 14 at 14-15)

#### b.   Private Interest Factors

process and later imported, sold, or used in the United States" and that none of the facts in
Plaintiffs' proffered declaration suggest that TTI "has any role in the foreign manufacture of
TSMC's semiconductor products, or the sale and importation of TSMC's semiconductor
products into the United States[.]" (D.I. 23 at 8)  However, as Plaintiffs note, Zond's allegations
in the Second TSMC Massachusetts Action were not expressly limited to infringement claims
made pursuant to Section 271(g).  (D.I. 21 at 13; Tr. 130-32)  At this stage, the Court could not
say that it would clearly have been in bad faith for Plaintiffs to include TTI as a Plaintiff in this
case—regardless of whether the Court ultimately finds subject matter jurisdiction to exist
regarding that entity's declaratory judgment claims.

### (1)   Plaintiff's choice of forum

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the fact of that choice, but the reasons behind the choice. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at \*4 & n.5 (D. Del. Oct. 15, 2012) ("*Pragmatus I*") (citing cases), *report and recommendation adopted*, 2013 WL 174499 (D. Del. Jan. 16, 2013) ("*Pragmatus II*"); *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998). "If those reasons are rational and legitimate, then they will weigh against transfer, as they are likely to support a determination that the instant case is properly venued in this jurisdiction." *Pragmatus I*, 2012 WL 4889438, at \*4 (internal quotation marks and citations omitted) (citing cases); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753 (D. Del. 2012) ("*Altera*"). On the other hand, where a plaintiff's choice of forum was made for an improper reason—such as where the choice is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—it should not be afforded substantial weight. *Pragmatus I*, 2012 WL 4889438, at \*4; *Affymetrix*, 28 F. Supp. 2d at 200 (noting that if a plaintiff had no good reason, or an improper reason, for filing suit in this District, this would likely weigh in favor of transfer).

Were this a case where the Court could conclude that forum shopping, as defined above, clearly motivated Plaintiffs' choice of forum, then this factor would not favor Plaintiffs' position, and would likely weigh in favor of transfer. *See, e.g., Ross*, 2013 WL 5299171, at \*9 (citing cases). For the reasons previously set out above, however, the Court cannot come to that conclusion, nor can it otherwise conclude that Plaintiffs' choice of this forum is the product of

25

bad faith or improper motive.

In part, that conclusion also turns on Plaintiffs' assertion that a key reason as to why they brought suit in Delaware was that Zond is a limited liability company organized under Delaware law. (D.I. 8 at 16-17) Our Court has repeatedly found that it is rational and legitimate for a plaintiff to choose to sue a defendant in that defendant's state of incorporation—a district where a plaintiff can have some certainty that there will be personal jurisdiction over the defendant. *See, e.g., Pragmatus I*, 2012 WL 4889438, at \*6; *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 373 (D. Del. 2012); *Altera*, 842 F. Supp. 2d at 754. Indeed, at oral argument Plaintiffs' counsel asserted that Plaintiffs first considered filing the instant suit in the Northen District of California—the site of TSMC NA's and TTI's principal places of business, where a number of relevant case documents are located. (Tr. at 21, 29-30) Concerned, however, as to whether personal jurisdiction over Zond would exist in that District, Plaintiffs instead filed suit in the District of Delaware, where personal jurisdiction over Zond was clear. (*Id.*)

For these reasons, this factor weighs against transfer.

### (2)    Defendant's choice of forum

Zond prefers to litigate in Massachusetts. In support, it explains that its principal place of business is in that State, as are its employees and its records. These amount to rational, legitimate bases for Zond's forum choice, and are sufficient to give this factor weight in the transfer analysis. *See McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at \*4 (D. Del. Dec. 13, 2013) (citing cases); *Pragmatus I*, 2012 WL

4889438, at *6.[15]

For these reasons, this factor weighs in favor of transfer.

### (3)    Whether the claim arose elsewhere

A claim regarding patent infringement arises "wherever someone has committed acts of infringement, to wit 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc.*, 2013 WL 6571618, at *5 (internal quotation marks and citations omitted). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases); *Altera*, 842 F. Supp. 2d at 755.

Here, Plaintiffs' principal places of business are in either Taiwan or San Jose, California. (D.I. 8, ex. A at ¶¶ 1-3) And it is not disputed that Zond's infringement claims are based at least in significant part on Plaintiffs' manufacturing activity that took place outside of the United States. (D.I. 8 at 17; D.I. 14 at 17) In light of this, both parties agree that the factor is neutral, (*id.*), as does the Court.

### (4)    Convenience of the parties as indicated by their relative physical and financial condition

In its briefing, Zond did not argue that the convenience of the parties as indicated by their relative physical and financial condition favors transfer, only that the factor is neutral here. (D.I.

---

[15]    Plaintiffs do not argue that Zond's choice of forum is entitled to no weight. (*See, e.g.*, D.I. 8 at 17) Plaintiffs do suggest, however, that this factor is automatically entitled to less weight than that given to Plaintiffs' choice of forum. (*Id.*) As the Court has previously explained, it "cannot find any authority from the Third Circuit suggesting that the weight accorded to *this particular Jumara factor* should automatically be reduced or lessened in every case, as compared to the weight accorded to the first private interest factor." *Pragmatus I*, 2012 WL 4889438, at *7 (emphasis in original) (citing *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006)).

14 at 16-17 ("It will be no more cumbersome for the properly-joined [Plaintiffs] to litigate this case in Massachusetts than in Delaware.")) Although Zond notes in its briefing that it is a "small company with only two full time employees[,]" (*id*. at 16 (citing D.I. 15 at ¶¶ 3, 5-12)), at oral argument its counsel conceded that there is "nothing in the record" to suggest that Zond's physical or financial condition renders it unduly burdensome for Zond to litigate in Delaware as opposed to Massachusetts, (Tr. at 93). Indeed, it would surprising if Zond, a Delaware LLC, argued otherwise. *Altera*, 842 F. Supp. 2d at 756 (explaining that a Delaware corporation should expect an "uphill climb" to argue that it is inconvenient to litigate in Delaware). Likewise, Plaintiffs have produced no evidence suggesting that it would be particularly inconvenient for them, from a physical or financial perspective, to litigate in Massachusetts as opposed to in Delaware.

Thus, the Court finds that this factor is neutral.

### (5)   Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879. "[I]n reviewing a motion to transfer, courts frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001). In explaining how the concerns implicated by this factor relate to the different types of witnesses who might testify at trial, this Court has noted:

> Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is

28

> able, indeed, obligated to procure the attendance of its own
> employees for trial. . . . Expert witnesses or witnesses who are
> retained by a party to testify carry little weight in determining where
> the "balance of convenience" lies (especially in an action for patent
> infringement) because they "are usually selected [on the basis] of
> their reputation and special knowledge without regard to their
> residences and are presumably well compensated for their
> attendance, labor and inconvenience, if any." . . . Fact witnesses
> who possess first-hand knowledge of the events giving rise to the
> lawsuit, however, have traditionally weighed quite heavily in the
> "balance of convenience" analysis.

*Affymetrix,* 28 F. Supp. 2d at 203 (citations omitted). Of particular concern, then, are fact

witnesses who may not appear of their own volition in the venue-at-issue and who could not be

compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp.,*

138 F. Supp. 2d at 569.

As an initial matter, our Court has noted that the practical impact of this factor is limited,

in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses

testify live). *Cellectis S.A. v. Precision Biosciences, Inc.,* 858 F. Supp. 2d 376, 382 n.6 (D. Del.

2012); *Altera,* 842 F. Supp. 2d at 757-58. A party's ability to put forward testimony of witnesses

of its choosing at trial is, of course, important; these cases simply recognize that the impact of

this factor has to be tempered a bit by the unlikely event of a trial's occurrence.

Here, Zond was the only party to identify in its briefing a particular witness who was said

to have any relevance as to this factor. That was Dr. Kurt Rauschenbach, the attorney who

prosecuted the Group Two Patents, and who has an office within the subpoena power of the

District of Massachusetts, but not this Court. (D.I. 14 at 17) At oral argument, however, Zond's

counsel acknowledged that Zond is currently one of Dr. Rauschenbach's clients, and that, based

on the current record, the Court would have to infer that were Zond to ask Dr. Rauschenbach to

testify in Delaware, the only reasonable conclusion is that "he would oblige." (Tr. at 93-94)
Even assuming that Dr. Rauschenbach is likely to be a trial witness in the case (and that is not
entirely clear to the Court), (D.I. 21 at 15), there is thus no record evidence to suggest that he
"may actually be unavailable for trial" in this District, *see Pragmatus I*, 2012 WL 4889438, at *9
("[A]bsent some concrete evidentiary showing that [asserted potential witnesses] would be
unlikely to testify, it is difficult to give Defendant's argument as to their potential unavailability
significant weight.") (citing cases); *Altera*, 842 F. Supp. 2d at 758.

In light of the fact that there is only one witness asserted to have relevance regarding this
factor—and that as to him, there is no real basis to suggest potential unavailability—the Court
finds that this factor is neutral.

### (6)   Location of books and records

Next the Court considers "the location of books and records (similarly limited to the
extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879.
"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused
infringer. Consequently, the place where the defendant's documents are kept weighs in favor of
transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal
quotation marks and citation omitted).[16]

---

[16]        This factor is commonly given little weight, however, as technological advances
have "shortened the time it takes to transfer information, reduced the bulk or size of documents
or things on which information is recorded . . . and have lowered the cost of moving that
information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys.,
Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation
marks and citation omitted); *see also Cellectis*, 858 F. Supp. 2d at 382; *ADE Corp.*, 138 F. Supp.
2d at 571 ("With new technologies for storing and transmitting information, the burden of
gathering and transmitting documents 3,000 miles is probably not significantly more than it is to
transport them 30 miles.").

Here, the accused infringers are (at least certain of) Plaintiffs, none of whom have any

relevant books and records in or anywhere close to either Delaware or Massachusetts.  (D.I. 1 at

¶¶ 1-3; D.I. 8 at 18)

Zond's books and records, including its original invention records, are located at its

principal place of business in Massachusetts.  (D.I. 14 at 16-17)  In its briefing and at oral

argument, however, Zond provided no specificity as to the kind or volume of its records that

would likely be relevant to any trial.  (D.I. 21 at 15; D.I. 23 at 5)  And at oral argument, Zond's

counsel noted that "in light of the electronic imaging [of records] and electronic discovery, I

don't think we['ve] made a substantial issue of [this factor], although we have at least asserted

that, yes, [Zond's] records are in [Massachusetts]."  (Tr. at 97)

Here, in light of the fact that (1) the location of the "bulk of the relevant evidence" is

likely to be in Taiwan or California; (2) Zond has not articulated with any specificity which of its

documents located in the District of Massachusetts are likely to be relevant at trial; and (3)

neither party truly believes that the relevant records "could not be produced in the alternative

forum," the Court finds this factor to be neutral.

### c.   Public Interest Factors

In their briefing, the parties only argue that two of the six public interest factors are

anything but neutral here:  practical considerations that could make trial easy, expeditious, or

inexpensive, and the local interest in deciding local controversies at home.  (D.I. 8 at 18-20; D.I.

14 at 18-19)  As the other public interest factors are not argued to be anything other than neutral

in the briefing, the Court will not address them further, and indeed finds them to be neutral.

### (1)   Practical considerations that could make the trial easy,

31

**expeditious, or inexpensive**

The Court then next considers the "practical considerations that could make the trial easy,

expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. The primary practical consideration in

dispute is that relating to judicial economy. Zond asserts that the circumstances surrounding the

District of Massachusetts actions involving the Group One Patents (including the First TSMC

Massachusetts Action) indicate that this factor should favor transfer. Plaintiffs argue that the

history of those actions dilute the weight that this factor should be given. (D.I. 8 at 14-16)  The

Court agrees with both sides, at least to some degree.

Zond is correct that there would likely be efficiencies gained were the instant action

(and/or the Second TSMC Massachusetts Action) to proceed in the District of Massachusetts,

due to the fact that the Group One Patent actions have previously been filed in that Court.

For example, it is not disputed that the Group One Patents have a real relationship to the

Group Two Patents at issue here. For example, both sets of patents share the same inventor and

they all relate to the same general subject matter. There are even more direct similarities between

certain of the patents, as one of the Group Two Patents shares an identical specification with a

Group One Patent, and another Group Two Patent shares a nearly-identical specification with a

Group One Patent.

Additionally, as to the First TSMC Massachusetts Action, Judge Young has overseen a

case involving the same parties and the same accused products as are at play in this matter. In

doing so, he has devoted resources to resolving a motion to dismiss, two motions to compel

discovery, and two motions to stay.[17]  Assuming that the First TSMC Massachusetts Action

resumes at some point (e.g., if the motion to stay in that case is later lifted), and were this case

not to be transferred, the parties would proceed to litigate cases regarding certain related patents

and the same accused products in two jurisdictions.

Moreover, at the time of the filing of the instant case, there were five other District of

Massachusetts actions involving the Group One Patents still pending (there are now four), two of

which had been stayed pending *inter partes* review proceedings (now, all four remaining cases

are stayed).  Although these cases are dispersed among a number of different District Judges,

(D.I. 8 at 7-8), it is still at least possible that issues that have arisen in the other Group One Patent

cases could come up again in a case involving the Group Two Patents.  If that happened, there

might be some efficiency gains realized even were different District Judges of the same Court to

be handling one of those other Group One Patent cases on the one hand, and the instant Group

Two Patent case on the other.  It is possible that District Judges of the same Court might be able

to more directly benefit from their own colleagues' common experience in resolving similar

issues (as compared to the benefit a Judge in a different District might get simply from reading

another court's opinion regarding a related case).  *Cf. Pragmatus I*, 2012 WL 4889438, at *12.

For these reasons, the Court believes that this "practical considerations" factor should

---

[17]     As Zond notes, at least one of those motions (one of the two motions to compel)
involved some discussion of the accused technology at issue here. (*See, e.g.*, D.I. 21 at 18; *Zond,
LLC I*, D.I. 71)  The Court also acknowledges Zond's point that in resolving almost any early-
stage motion in a patent case, a court is often required to make at least some reference to the
nature of the particular patent claims or to the accused products at issue. However, as is further
noted below, it is also fair to say (as Zond's counsel acknowledged during oral argument) that the
"level" of the court's engagement with the patent and accused products at such a stage is
typically not as great as it would be "at a *Markman* hearing" and thereafter. (Tr. at 70)

favor transfer. However, the Court also agrees with Plaintiffs that the amount of weight that this factor should receive is not as strong as it could be, due to certain additional factors at issue here.

One such factor is that the Group One Patent cases obviously involve different patents than are at issue in the instant case (with the exception of the fact that two Group Two Patents are asserted in the Gillette Action). Although there is real relatedness between the Group One Patents and the Group Two Patents, as noted above, there are also differences, including differences in claim scope and the fact that the patents do not all share common specifications. (D.I. 8 at 14) These differences will, in turn, likely lead to a number of distinct infringement, claim construction and invalidity issues in the instant case as compared to the litigation involving the Group One Patents. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2013 WL 4629000, at *9 (D. Del. Aug. 28, 2013); *Mallinckrodt Inc.*, 670 F. Supp. 2d at 357.

Moreover, even to the extent that the Group One Patents share real similarities with the Group Two Patents, if the instant case were to be transferred to the District of Massachusetts, that would not have the impact of consolidating all cases involving these patents and these parties before one Judge. The five currently pending cases involving the Group One Patents are before four different District Judges in the District of Massachusetts; each is proceeding on its own schedule, and there is no future prospect that any of those cases will be consolidated before a single Judge. If, after transfer, all similar cases involving related patents would be assigned to one Judge in one forum, the efficiencies to be gained in such a scenario might even more strongly counsel in favor of transfer. *Cf. Human Genome Scis., Inc. v. Genentech, Inc.*, Civ. No. 11-082-LPS, 2011 WL 2911797, at *10 (D. Del. July 18, 2011) (granting defendants' motions to transfer in part because the District Judge in the proposed transferee forum had almost a decade of

34

experience with one of the patents-in-suit, had issued "over 800 docket entries" and many

substantive decisions in related cases, and considered herself a "student of" one of the patents-in-

suit).

Lastly, this factor would even more strongly favor Zond were the First TSMC

Massachusetts Action to have proceeded to the stage (such as past a *Markman* hearing, or

summary judgment) where the District Court had already been required to review the patents,

relevant prior art, or the accused technology in great detail. The currently pending Group One

Patent cases were all stayed at a relatively early point. The overall net loss in judicial economy

were transfer denied would seem more stark here were the Group One Patent cases (and

particularly the First TSMC Massachusetts Action) to have already proceeded to the point where

it was clear that the presiding Judges had delved deeply into the patented technology. *See In re

Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (finding that a district court's decision to

decline to transfer a case was supported by the fact that the Court "became *very familiar with* the

only asserted patent and the related technology during a prior litigation") (emphasis added);

*Cashedge, Inc. v. Yodlee, Inc.*, No. Civ.A.06–170 JJF, 2006 WL 2038504, at *2 (D. Del. July 19,

2006) (finding that the "practical considerations" factor was "*strongly*" in favor of transfer, but in

a case where the proposed transferee court had not only presided over litigation regarding the

same parties, related patents-in-suit and similar technologies, but also where that Court had

engaged in an "two-hour technology tutorial" and had heard "Markman issues in nine [related]

patents") (emphasis added).[18]

---

[18]    *Cf. Ross*, 2013 WL 5299171, at *1-3, *8-9, *13 (finding the "practical
considerations" factor to weigh "strongly" in favor of transfer in a non-patent case, but where the
district court in the proposed transferee jurisdiction had already presided over and had resolved

In summary, then, the Court agrees with Zond that this factor favors transfer. And it also agrees with Plaintiffs that the strength of this factor is not as great as it would have been, had the Group One Patent cases involved the same patents, had they all been before the same Judge, and had they proceeded near to trial.

### (2) Local interests in dispute

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, C.A. No. 12-cv-00210-LPS, 2013 WL 3295618, at *7 (D. Del. June 28, 2013). Nevertheless, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann–La Roche*, 587 F.3d at 1338 (citations omitted); *see also Graphics Props.*, 2013 WL 3295618, at *7.

Zond does not argue that this factor favors either side. But, at least in their briefing, Plaintiffs suggest that because TTI "is a Delaware corporation with interests materially affected by the dispute over the Group Two Patents" and "Zond too is a Delaware entity" then the factor should weigh against transfer. (D.I. 8 at 19-20)

Our Court has noted that Delaware "has a strong interest in adjudicating disputes among its corporate citizens." *Altera*, 842 F. Supp. 2d at 760. It has found this to be particularly so, however, in a case involving litigation "solely among Delaware corporations." *Id.*

---

matters in a prior litigation that involved nearly all of the same legal issues and facts at issue in the instant case).

Here, for the reasons previously discussed, the Court declines to consider TTI's Delaware

corporate status in this calculus. Our Court's precedent suggests that Zond's status as a

Delaware LLC could be said to foster an articulable local interest in Delaware as to the outcome

of this dispute. *See, e.g., Autodesk Canada Co. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009

WL 3151026, at *9 (D. Del. Sept. 29, 2009) ("Delaware clearly has a substantial interest in

addressing lawsuits brought against Delaware corporations."). This interest, however, would be

counterbalanced here by the fact that Zond is headquartered in the proposed transferee district,

the District of Massachusetts. *See Intellectual Ventures I LLC v. Checkpoint Software Techs.*

*Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011); *Human Genome Scis.*, 2011 WL 2911797, at *11.

For these reasons, this factor is neutral.

### d. Conclusion Regarding the *Jumara* Factors

With respect to the *Jumara* factors, two weigh in favor of transfer (the defendant's choice

of forum and the "practical considerations" factor), and one weighs against transfer (the

plaintiff's choice of forum). The rest of the factors are neutral.

Here, both parties wish the litigation to proceed in their chosen forum, and there are

understandable, well-settled reasons as to why those forum choices are legitimate. And the fact

that related litigation has proceeded in the District of Massachusetts does tip the *Jumara*

balancing process in favor of transfer. But the Third Circuit's test requires that after

consideration of the *Jumara* factors, that calculus ends up "*strongly* in favor of" transfer. *Shutte*,

431 F.2d at 25 (emphasis added). And here, because the "practical considerations" factor is not

as strong as it might be in other cases (for the reasons set out above), and because Zond's

showing as to every other disputed *Jumara* factor failed to demonstrate that any favored transfer,

37

the Court cannot come to the overall conclusion that the *Jumara* factors *strongly* favor Zond's position. In the Court's view, there is just not sufficient strength in Zond's arguments to overcome the historic respect accorded the first-filed plaintiff's choice of forum.

## IV.    CONCLUSION

The cited exceptions to the first-filed rule either do not apply to this case, or do not apply with any meaningful force. Nor does a careful review of the *Jumara* factors militate in favor of a decision that transfer of venue would be appropriate under Third Circuit law. Thus, in the Court's view, there is not "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938. In such a circumstance, the Court is required to return to the policy behind the Federal Circuit's first-filed rule, which dictates that Zond's Motion to Transfer should be denied, and that the Second TSMC Massachusetts Action should be enjoined. *See Cellectis*, 858 F. Supp. 2d at 385 (enjoining second-filed suit in proposed transferee court and denying a motion to transfer, where an earlier litigation regarding related patents had been filed in the proposed transferee court and was then later stayed pending *inter partes* review); *see also Nexans Inc.*, 966 F. Supp. 2d at 405-06; *Trustco Bank*, 933 F. Supp. 2d. at 672.

For the foregoing reasons, the Court recommends that Plaintiffs' Motion to Enjoin be GRANTED as to the Second TSMC Massachusetts Action, and orders that Defendant's Motion to Transfer be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the

loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874,

878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website,

located at http://www.ded.uscourts.gov.

Dated: December 19, 2014

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE